IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIMITNONE LLC, | ) | Hon. Blanche Manning |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-4178 |
| | ) | |
| vs. | ) | Magistrate Judge Cox |
| | ) | |
| GOOGLE INC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GOOGLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS FOR IMPROPER VENUE UNDER F.R.C.P. 12(b)(3)
<u>OR, IN THE ALTERNATIVE, MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)</u>**

## TABLE OF CONTENTS

**Page**

**INTRODUCTION** ................................................................................................................1

**STATEMENT OF FACTS** ...............................................................................................1

**The Agreements Governing the Business Relationship Between LimitNone and Google** .............................................................................................................1

**The LimitNone Complaint** ......................................................................................3

**ARGUMENT** ....................................................................................................................4

**I. LIMITNONE BROUGHT ITS CLAIMS IN AN IMPROPER FORUM, REQUIRING DISMISSAL OF THIS ACTION PURSUANT TO RULE 12(B)(3)** .............................................................................................................4

A. The Contracts Between LimitNone and Google Govern the Instant Dispute. ..........................................................................................5

B. LimitNone's Complaint Should Be Dismissed Because the Governing Forum Selection Clauses Require LimitNone to Bring Its Claims in California, Not Illinois. ...............................................................8

**II. ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A).** .........................................................................................10

A. The Forum Selection Clauses Weigh Heavily in Favor of Transfer. ....................11

B. All Remaining Section 1404(a) Factors Also Weigh in Favor of Transfer. ..........12

**CONCLUSION** ................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*AGA Shareholders, LLC v. CSK Auto, Inc.*,
    467 F. Supp. 2d 834 (N.D. Ill. 2006) ...........................................................................9

*Abbott Laboratories v. Takeda Pharmaceutical Co. Ltd.*,
    476 F.3d 421 (7th Cir. 2007) ..................................................................................6, 8

*American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*,
    364 F.3d 884 (7th Cir. 2004) ......................................................................................7

*Bonny v. Society of Lloyd's*,
    3 F.3d 156 (7th Cir. 1993) ..........................................................................................9

*CQL Original Products, Inc. v. National Hockey League Players' Assn.*,
    39 Cal. App. 4th 1347 (Cal. App. 4 Dist. 1995) .........................................................9

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991)................................................................................................8, 10

*Chicago, R. I. & P. R. Co. v. Igoe*,
    220 F.2d 299 (7th Cir. 1955) ....................................................................................12

*Cuno, Inc. v. Hayward Indust. Products, Inc.*,
    2005 WL 1123877 (S.D.N.Y. May 10, 2005) ............................................................7

*Dye v. Wargo*,
    253 F.3d 296 (7th Cir. 2001) ....................................................................................10

*Glazer v. Quebecor World, Inc.*,
    2006 WL 335791 (N.D. Ill. Feb. 13, 2006) ...........................................................4, 10

*Hanley v. Omarc, Inc.*,
    6 F. Supp. 2d 770 (N.D. Ill. 1998) ............................................................................12

*Heller Financial, Inc. v. Midwhey Powder Co., Inc.*,
    883 F.2d 1286 (7th Cir. 1989) ..................................................................................11

*Hubble v. O'Connor*,
    291 Ill. App. 3d 974, 684 N.E.2d 816 (Ill. App. 1 Dist. 1997).................................10

*International Star Registry of Illinois v. Omnipoint Marketing, LLC*,
    2006 WL 2598056 (N.D. Ill. Sept. 6, 2006) .............................................................13

*Kochert v. Adagen Medical Intern., Inc.*,
    491 F.3d 674 (7th Cir. 2007) ......................................................................................4

*Lashcon, Inc. v. Butler*,
    340 F. Supp. 2d 932 (C.D. Ill. 2004) .......................................................................13

*Lu v. Dryclean-U.S.A. of California, Inc.*,
   11 Cal. App. 4th 1490 (Cal. App. 1 Dist. 1992) ...............................................................8

*MBI Group, Inc. v. Credit Foncier du Cameroun*,
   ___ F. Supp. 2d ___, 2008 WL. 2345347 (D.D.C. June 10, 2008) .....................................7

*M & K Chemical Engineering Consultants, Inc. v. Mallinckrodt, Inc.*,
   2008 WL 2477691 (S.D. Ill. June 18, 2008)..............................................................9, 10

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)..........................................................................................................9

*Missouri Franchise Development Systems, LLC v. McCord*,
   2007 WL 3085961 (S.D. Ill. Oct. 22, 2007) ...............................................................11

*Morton Grove Pharmaceuticals, Inc. v. National Pediculosis Ass'n, Inc.*,
   525 F. Supp. 2d 1039 (N.D. Ill. 2007) .........................................................................1

*Muzumdar v. Wellness Intern. Network, Ltd.*,
   438 F.3d 759 (7th Cir. 2006) ....................................................................................4, 8

*New Hampshire Ins. Co. v. Green Dragon Trading Co.*,
   2008 WL 2477484 (N.D. Ill. June 18, 2007) ..............................................................13

*Northwestern Nat. Ins. Co. v. Donovan*,
   916 F.2d 372 (7th Cir. 1990) ....................................................................................11

*Oldlaw Corp. v. Allen*,
   2007 WL 2772697 (C.D. Ill. Sept. 27, 2007) ...............................................10, 13, 14

*Organ v. Byron*,
   434 F. Supp. 2d 539 (N.D. Ill. 2005) ........................................................................13

*Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*,
   972 F.2d 753 (7th Cir. 1992) .......................................................................................9

*Photogen, Inc. v. Wolf*,
   2001 WL  477226 (N.D. Ill. May 7, 2001) .................................................................4

*Rotec Industries, Inc. v. Aecon Group, Inc.*,
   436 F. Supp. 2d 931 (N.D. Ill. 2006) ..........................................................................1

*Sanders v. Franklin*,
   25 F. Supp. 2d 855 (N.D. Ill. 1998) ..........................................................................11

*Stewart Organization, Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988).................................................................................................8, 11

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)...................................................................................................12

*Xantrex Technology, Inc. v. Advanced Energy Indus., Inc.*,
   2008 WL 2185882 (D. Colo. May 23, 2008).................................................................7

## **Statutes**

17 U.S.C. § 301 .......................................................................................................4

28 U.S.C. § 1404 .....................................................................................................1

28 U.S.C. § 1404(a) ..............................................................................4, 10, 11, 13, 14

28 U.S.C. § 1406 ...................................................................................................13

28 U.S.C. § 1406(a) ..............................................................................................13

Fed. R. Civ. P. 12(b)(3) ...............................................................................1, 4, 5, 14

Fed. R. Civ. P. 81 ....................................................................................................2

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq* .............10

Illinois Trade Secrets Act, 765 ILCS 1065/1-9 *et seq* ...................................................10

## INTRODUCTION

This case concerns a dispute between LimitNone, LLC and Google Inc., in which LimitNone alleges that Google misappropriated and copied LimitNone's software program during the parties' business relationship in 2007.  That business relationship was governed by written contracts in which LimitNone agreed—not once, but twice—to bring any suit regarding any and all disputes arising from that relationship in the California courts.  Because LimitNone's present suit was filed in Illinois, in violation of the two mandatory forum selection clauses to which LimitNone agreed, this action should be dismissed for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  Alternatively, should the Court decline to dismiss this action for improper venue, the interests of justice warrant transferring this action to the District Court for the Northern District of California (San Jose Division) pursuant to 28 U.S.C. § 1404.

## STATEMENT OF FACTS

### The Agreements Governing the Business Relationship Between LimitNone and Google

In early 2007, representatives of LimitNone contacted Google to explore possible involvement in the Google Enterprise Professional Program.  Complaint ¶ 18.  As part of this process, LimitNone and Google executed two written agreements.[1]

The first contract, entitled "Mutual Non-Disclosure Agreement" (the "NDA"), was executed by LimitNone on or about February 27, 2007.  Among other things, the NDA described its purpose as follows:

> a) to evaluate whether to enter into a contemplated business transaction, and b) if the Parties enter into an agreement related to such business transaction, to fulfill

---

[1]   The Complaint fails to mention or attach either of the two contracts containing the forum selection clauses that govern this dispute.  Google submits them now as Exhibits A (the Mutual Non-Disclosure Agreement) and B (the Google Enterprise Professional Agreement) to this Motion.  This Court may consider such evidence in ruling on a motion to dismiss for improper venue under Fed. R. Civ. P 12(b)(3).  *See, e.g.*, *Morton Grove Pharmaceuticals, Inc. v. National Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039, 1043 (N.D. Ill. 2007) (a court considering a motion to dismiss for improper venue "may examine facts outside the complaint"); *Rotec Industries, Inc. v. Aecon Group, Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006) (same).

> each Party's confidentiality obligations to the extent the terms set forth below are
> incorporated therein (the "Purpose").

*See* Ex. A (Preamble).  The NDA contains various terms governing the parties' contemplated

exchange of confidential information, which information is described as including:

> (a) **trade secrets**; (b) financial information, including pricing; (c) **technical
> information,** including research, development, procedures, algorithms, data,
> **designs**, and know-how; (d) business information, including operations, planning,
> marketing, interests **and products**; (e) the terms of any agreement entered into
> between the Parties and the discussions, negotiations and proposals related
> thereto; and (f) information acquired during any facilities tours.

*See* Ex. A, ¶ 2 (emphasis added).  The NDA also includes a mandatory forum selection clause

that states as follows:

> **The exclusive venue for any dispute relating to this Agreement shall be in the
> state or federal courts within Santa Clara County, California**.

*See* Ex. A ¶ 16 (emphasis added).  Finally, the NDA includes a choice of law clause providing

that it "shall be governed by the laws of the State of California, without reference to conflict of

laws principles."  *See id.*

LimitNone and Google executed a second contract, entitled "Google Enterprise

Professional Agreement" (the "GEP Agreement"), on or around March 9, 2007.  *See* Ex. B.[2]  The

stated purpose of the GEP Agreement is as follows:

> Subject to the terms of this Agreement, Company [LimitNone] shall participate in
> the Google Enterprise Professional Program (the "Program") pursuant to which it
> will license certain Google Enterprise Products which may include hardware,
> software and documentation (collectively "Products") or subscribe to certain
> Google-hosted services ("Hosted Services") and obtain technical services and
> training in order to assist Company in developing its own products and services
> which work in conjunction with the Products and Hosted Services.

---

[2]  Paragraph 6 of the GEP Agreement states that "the terms of this Agreement" shall be
considered "Confidential Information."  *See* Ex. B, ¶ 6.  Accordingly, in Exhibit B to this
Motion, Google has redacted the confidential portions of the GEP Agreement that are irrelevant
to the Court's resolution of the Motion.  Concurrently, Google has filed a Motion for Restrictive
Order and for Leave to File Under Seal an Unredacted Version of Exhibit B.  Google was unable
to obtain leave of court to file Exhibit B under seal prior to the filing of Google's Motion to
Dismiss, because pursuant to Fed. R. Civ. P. 81, Google's deadline for filing its responsive
pleading was just five days after the date this action was removed to this Court.  Google is hand-
serving LimitNone with a complete and unredacted copy of the GEP Agreement.

*See* Ex. B ¶ 1.  The GEP Agreement specifies that the confidential information that may be shared between the parties under the Agreement includes "pricing, the terms of this Agreement and the discussions, negotiations and proposals related thereto and other information clearly and conspicuously identified as "confidential".  *See* Ex. B ¶ 6.

Like the NDA, the GEP Agreement contains a mandatory forum selection clause requiring either party to bring suit regarding any disputes in the courts of Santa Clara County, California:

> **Company [LimitNone] and Google agree to submit to the personal and <u>exclusive</u> jurisdiction of the courts located in Santa Clara County, California.**

*See* Ex. B ¶ 9 (emphasis added).  Also like the NDA, the GEP Agreement has a California choice of law clause that provides:

> This Agreement and any claim or dispute of whatever nature arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the State of California and the federal U.S. laws applicable therein, without giving effect to any choice of law principles that would required the application of the laws of a different state.

*See* Ex. B ¶ 9.

### The LimitNone Complaint

On June 23, 2008, LimitNone filed a complaint against Google in the Circuit Court of Cook County, Illinois.  LimitNone alleges that in early 2007, it contacted Google concerning LimitNone's interest in Google's Enterprise Professional program, and that subsequently LimitNone was invited to join the Google Enterprise Professional Group.  Complaint ¶¶ 18-20. Pursuant to that relationship, LimitNone alleges that it traveled to Mountain View (Santa Clara County), California, where it met with Google and shared with Google a prototype software program known as gMove.  Complaint ¶¶ 21-23.  LimitNone additionally alleges that it shared with Google other versions of the gMove program, as well as confidential marketing plans and sales information.  Complaint ¶¶ 29, 47-49.  Ultimately, LimitNone contends that Google misappropriated and/or copied LimitNone's software program and related materials, and launched a competing program, to LimitNone's detriment.  Complaint ¶¶ 70-71.  Based upon

these alleged acts, LimitNone pleads two causes of action, under (1) the Illinois Trade Secrets Act (Complaint ¶¶ 59-64), and (2) the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").  Complaint ¶¶ 66-77.

On July 23, 2008, Google properly removed the Complaint to this Court, on the basis of federal question jurisdiction, because LimitNone's unfair competition claim brought under the ICFA is preempted by the federal Copyright Act, 17 U.S.C. § 301.

## ARGUMENT

This action should be dismissed under Federal Rule of Civil Procedure 12(b)(3), because the parties' agreements require this dispute to be brought in Santa Clara County, California, rendering Illinois an improper venue.  In the alternative, the interests of justice warrant transferring this action to the District Court for the Northern District of California (San Jose Division) under 28 U.S.C. § 1404(a).

## I.    LIMITNONE BROUGHT ITS CLAIMS IN AN IMPROPER FORUM, REQUIRING DISMISSAL OF THIS ACTION PURSUANT TO RULE 12(B)(3).

Because LimitNone contractually agreed—not once, but twice—to bring suit regarding any disputes relating to its business relationship with Google in the federal or state courts sitting in Santa Clara County, California, this action should be dismissed for improper venue.

A challenge to venue based upon a mandatory forum selection clause is appropriately brought through a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(3).  *Muzumdar v. Wellness Intern. Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006). Accordingly, a complaint is subject to dismissal under Rule 12(b)(3) if it was originally brought in a venue other than the venue in which the complainant had contractually agreed to bring suit. *Glazer v. Quebecor World, Inc.*, 2006 WL 335791, at *5 (N.D. Ill. Feb. 13, 2006) ("Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(3) where a claim is covered by a valid forum selection clause that selects a venue elsewhere."); *Photogen, Inc. v. Wolf*, 2001 WL

477226, at *2-3 (N.D. Ill. May 7, 2001) (enforcing a forum selection clause in a nondisclosure agreement).

Here, LimitNone filed suit in Cook County, Illinois, in violation of the mandatory forum selection clauses contained in the two contracts LimitNone executed in connection with its business relationship with Google—both of which designate Santa Clara County, California as the exclusive forum for disputes between the parties.  Accordingly, the Complaint should be dismissed pursuant to Rule 12(b)(3).

     A.     <u>The Contracts Between LimitNone and Google Govern the Instant Dispute.</u>

The NDA and GEP Agreement state in clear terms that they govern disputes such as the one that LimitNone has pleaded here.  Indeed, by its own allegations, LimitNone's suit arose from LimitNone's role as a Google Enterprise Professional—the very business relationship created and memorialized in these agreements.  *See* Complaint, ¶¶ 18-22, 27-29, 37-38, 47-49, 70-71.  Specifically, according to LimitNone's allegations, in early 2007, LimitNone contacted Google concerning LimitNone's interest in Google's Enterprise Professional program, and that subsequently LimitNone was invited to join the Google Enterprise Professional Group.  Complaint ¶¶ 18-22.  LimitNone further alleges that during the course of that relationship, LimitNone shared with Google certain proprietary and trade secret information relating to the gMove software program, including "the gMove program," "sales forecasts," "conceptual design" of gMove," "technical process[es]" and "marketing materials."  Complaint, ¶¶ 22, 29, 48 55, 56, 70.  Finally, LimitNone claims that Google copied and misappropriated the software and other materials, to LimitNone's detriment.  Complaint ¶¶ 55-56, 62-64, 74.

This alleged conduct falls squarely within the scope and terms of the NDA and the GEP Agreement.  The NDA states in relevant part that it covers the exchange of confidential information between the parties—including "trade secrets," "technical information," "designs," and "products"—as the parties explored a potential business relationship.  *See* Ex. A, Preamble & ¶ 2.  That is exactly what LimitNone has alleged—that it shared such information and products with Google.  *See* Complaint, ¶¶ 18-22, 29, 48 55, 56.  Similarly, the GEP Agreement

broadly covers the entire scope of LimitNone's participation the Google Enterprise Professional Program. *See* Ex. B ¶¶ 1, 6. It was pursuant to its participation in this Program that LimitNone claims it disclosed to Google its software and confidential information. *See* Complaint, ¶¶ 18-22, 29, 48 55, 56.

As such, the mandatory forum selection clauses in both the NDA and the GEP Agreement encompass this dispute. The NDA's forum selection clause provides that "the <u>exclusive</u> venue for any dispute relating to this Agreement shall be in the state or federal courts within Santa Clara County, California." *See* Ex. A, ¶ 16 (emphasis added). The GEP Agreement likewise states that the parties "agree to submit to the personal and <u>exclusive</u> jurisdiction of the courts located in Santa Clara County, California." *See* Ex. B ¶ 9 (emphasis added).

Seventh Circuit law supports this plain reading of the agreements. Specifically, in cases involving a contract with a forum selection clause, "the forum selection clause does not apply just to the litigation of ***claims*** that arise out of, concern, etc., the contract; it applies to the litigation of ***disputes*** that arise out of, concern, etc., the contract." *Abbott Laboratories v. Takeda Pharmaceutical Co. Ltd.*, 476 F.3d 421, 424 (7th Cir. 2007) (emphasis added). Stated another way, causes of action arising from conduct ancillary to a contract are governed by forum selection clauses within the contract. *See Kochert v. Adagen Medical Intern., Inc.*, 491 F.3d 674, 679 (7th Cir. 2007) ("Kochert's fraudulent inducement claim stems from her contractual relationship with Adagen" and therefore "[t]he contract's forum-selection clause is not limited to claims for breach," but rather governs the fraudulent inducement claim).

As a result, LimitNone cannot escape the forum selection clause by pursuing a trade secrets claim instead of a contractual one. As the Seventh Circuit has explained:

> [T]he existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

*American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (enforcing a forum selection clause in insurance action for fraud); *see also Xantrex Technology, Inc. v. Advanced Energy Indus., Inc.*, 2008 WL 2185882, at *7 (D. Colo. May 23, 2008) (forum selection clause covered claims under the Colorado Trade Secrets Act because they arose under the same facts as would a claim for breach of the nondisclosure agreement containing the clause; "Non-contract claims that involve the same operative facts as a parallel breach of contract claim fall within the scope of a forum selection clause."); *MBI Group, Inc. v. Credit Foncier du Cameroun*, ___ F. Supp. 2d ___, 2008 WL 2345347, at *13 (D.D.C. June 10, 2008) (dismissing claims for misappropriation of trade secrets where "at least two of the agreements contain a forum selection clause identifying the High Court of Yaounde, Cameroon as the proper tribunal to adjudicate any disputes."); *Cuno, Inc. v. Hayward Indust. Products, Inc.*, 2005 WL 1123877, at *4 (S.D.N.Y. May 10, 2005) (enforcing forum selection clause in a nondisclosure agreement executed by the parties with respect to a suit for patent infringement, holding that "[a] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship.") (internal citations omitted).

Thus, under both the clear terms of the agreements themselves and the weight of authority, LimitNone's claims are governed by the two mandatory forum selection clauses in the underlying agreements between the parties. LimitNone may not avoid enforcement of these forum selection clauses though artful pleading where, as here, its claims grew out of the very contractual relationship containing those clauses. *See American Patriot Ins. Agency, Inc.*, 364 F.3d at 889.

B.    LimitNone's Complaint Should Be Dismissed Because the Governing Forum Selection Clauses Require LimitNone to Bring Its Claims in California, Not Illinois.

This action should be dismissed because two binding, mandatory forum selection clauses govern LimitNone's present dispute with Google.  Under both Seventh Circuit and California law,[3] forum selection clauses such as the ones agreed to by LimitNone here are presumptively valid and enforceable.  *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991); *Muzumdar*, 438 F.3d at 762 ("a forum selection clause will be enforced unless it can be clearly shown 'that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching'") (internal citations omitted); *Lu v. Dryclean-U.S.A. of California, Inc.*, 11 Cal.App.4th 1490, 1493 (Cal. App. 1 Dist. 1992) ("Given the importance of forum selection clauses, both the United States Supreme Court and the California Supreme Court have placed a heavy burden on a plaintiff seeking to defeat such a clause, requiring it to demonstrate that enforcement of the clause would be unreasonable under the circumstances of the case.").

As the Supreme Court has recognized, a "forum-selection clause is given controlling weight in all but the most exceptional cases."  *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 32 (1988) (Kennedy, J., concurring).  Specifically, forum selection clauses are held invalid only in three narrowly defined circumstances:

> "(1) if their incorporation into the contract was the result of fraud, undue influence or overweening bargaining power, . . . (2) if the selected forum is so "gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court . . . or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision..."

---

[3] The Seventh Circuit has suggested that the enforceability of a forum selection clause should be evaluated under the same law as governs the rest of the agreement in which it is found, which in this case is California law.  *See Abbott Laboratories*, 476 F.3d at 423; Complaint, Ex. A, ¶ 16 (California choice of law provision) and (Ex. B ¶ 9 (California choice of law provision).  Under either body of law, however, the result is the same—the forum selection clauses in question are valid and should be enforced.

*Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 16-17 (1972)).  None of these narrow exceptions applies here.

First, the inclusion of the forum selection clauses in the NDA and GEP Agreement involved no fraud, undue influence or overweening bargaining power, nor has LimitNone so alleged.  *See, e.g.*, *CQL Original Products, Inc. v. National Hockey League Players' Assn.*, 39 Cal.App.4th 1347, 1355 (Cal. App. 4 Dist. 1995) (forum selection clause was valid even if objecting party could not negotiate so long as the objecting party would have been able to "walk away from negotiations" without signing).

Second, LimitNone cannot show that proceeding in the Northern District of California—where LimitNone voluntarily initiated its relationship with Google—would be so "gravely difficult and inconvenient" that LimitNone "will for all practical purposes be deprived of its day in court."  *AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834 (N.D. Ill. 2006) (internal citations omitted).  This bar is a high one, and a routine claim of inconvenience will not meet it.  *See, e.g., Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 758 (7th Cir. 1992) (enforcing forum selection clause requiring litigation to take place in Germany).

Third, enforcement of the forum selection clauses here would not contravene any strong Illinois public policy or statute.  Indeed, both agreements include a choice of law provision requiring the application of California law.  *See, e.g.*, Ex. B ¶ 9 ("This Agreement and any claim or dispute of whatever nature arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the state of California . . . .").  There is no public policy against having the laws of one jurisdiction applied by a court sitting in that same jurisdiction.  *See M & K Chemical Engineering Consultants, Inc. v. Mallinckrodt, Inc.*, 2008 WL 2477691, at *3 (S.D. Ill. June 18, 2008) ("Allowing Missouri courts to apply Missouri professional engineering licensing law to the contract does not conflict with Illinois public policy"); *cf. CQL Original Products, Inc.*, 39 Cal. App. 4th at 1357 (no public policy bar to enforcement of a forum selection clause existed in the absence of a statute prohibiting election of

the target forum).[4]  To the contrary, enforcing the forum selection clause is in keeping with public policy, for, as the Supreme Court recognized in *Carnival Cruise Lines*, forum selection clauses "dispel[] any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions." 499 U.S. at 593.  Application of the forum selection clauses to which LimitNone agreed provides precisely these benefits.

The forum selection clauses agreed to by LimitNone are valid and enforceable, and LimitNone's Complaint should be dismissed pursuant to Rule 12(b)(3).  *See Glazer*, 2006 WL 335791, at *5 (dismissing for improper forum causes of action based on an agreement containing a valid forum selection clause requiring that claims be brought in Quebec); *M & K Chemical Engineering*, 2008 WL 2477691, at *3 (enforcing a forum selection clause and dismissing case "for improper venue").[5]

## II.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A).

Should this Court conclude that transfer of this action would be preferable to dismissal in light of the parties' agreed-to mandatory forum selection clauses, it may do so pursuant to 28 U.S.C. § 1404(a).[6]  Under Section 1404(a), a court has discretion to transfer a case where venue was proper in the transferor district, venue and jurisdiction would be proper in the transferor district, venue and jurisdiction would be proper in the transferee district, and the transfer would

---

[4]   Nor do the statutes under which LimitNone initially brought this action include language suggesting that the application of California law would be against Illinois public policy.  *See* Illinois Trade Secrets Act, 765 ILCS 1065/1-9 *et seq.*; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*

[5]   That the NDA bears LimitNone's signature but not Google's has no bearing on its enforceability against LimitNone.  *See Dye v. Wargo*, 253 F.3d 296 (7th Cir. 2001) ("the statute of frauds requires the signature only of the party sought to be bound."); *Hubble v. O'Connor*, 291 Ill.App.3d 974, 984, 684 N.E.2d 816, 833 (Ill. App. 1 Dist. 1997) (a signee to an agreement is bound even if not all other parties signed).

[6]   *See, e.g.*, *Oldlaw Corp. v. Allen*, 2007 WL 2772697, at *6 (C.D. Ill. Sept. 27, 2007).

serve the convenience of the parties and the witnesses as well as the interests of justice. *See Sanders v. Franklin,* 25 F. Supp. 2d 855, 857 (N.D. Ill. 1998). Here, in the alternative to dismissal, this action should be transferred to the Division of the District Court for the Northern District of California that sits in Santa Clara County, California, where the parties agreed to resolve all disputes.

A.    The Forum Selection Clauses Weigh Heavily in Favor of Transfer.

The mandatory forum selection clauses governing this dispute warrant transfer of this action to the Northern District of California. Under Section 1404(a), transfer of an action is permitted to any district in which it could have been brought initially, if the transfer would serve the interests of justice. This action could—and should—have been brought in Santa Clara County in the first instance, since that is Google's principal place of business and where the parties' business relationship arose. *See* Complaint, ¶¶ 2, 18-22. Given that the parties contractually agreed to bring all disputes in Santa Clara County and nowhere else, the interests of justice support a transfer here. As the Supreme Court has noted when discussing the balancing analysis required by Section 1404(a), "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." *Stewart Organization, Inc.*, 487 U.S. at 29.

Nor may LimitNone argue to the contrary, because where a party has agreed to a forum selection clause, as LimitNone has twice done here, that party may not argue the injustice of the selected forum in opposing a motion to transfer. *Northwestern Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir. 1990); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) ("By virtue of the forum-selection clause, Midwhey has waived the right to assert its own inconvenience as a reason to transfer the case."). Accordingly, the parties' agreed-upon mandatory forum selection clauses militate in favor of transferring this action. *See, e.g, Missouri Franchise Development Systems, LLC v. McCord*, 2007 WL 3085961, at *3 (S.D. Ill. Oct. 22, 2007) (granting motion to transfer because of forum selection clause). LimitNone's election to agree to California as the exclusive forum for any disputes with Google weighs

heavily in favor of transferring this action, and LimitNone is precluded from arguing to the contrary.

> B.      All Remaining Section 1404(a) Factors Also Weigh in Favor of Transfer.

The remaining factors considered in a Section 1404(a) transfer analysis also militate in favor of transferring this action to Santa Clara County, California.  These factors include the plaintiff's choice of forum, the situs of material events, the relative ease of access to sources of proof, the convenience of the witnesses, and the convenience to the parties of litigating in the respective forums.  *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 774 (N.D. Ill. 1998); *See also Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

First, LimitNone's choice of filing in an Illinois forum counts little in the overall analysis, both because (1) LimitNone agreed on two separate occasions to litigate its disputes with Google in California, and (2) the vast majority of the alleged conduct referenced in the Complaint occurred outside the forum selected by the plaintiff.  *See Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (granting writ of mandamus to compel transfer where "there is no controverted question which depends on any event occurring in the Northern District of Illinois").

Indeed, according to the allegations in LimitNone's Complaint, most if not all relevant events underlying this action occurred in California.  *See, e.g.*, *Hanley*, 6. F. Supp. 2d at 775 (transfer to New Jersey was appropriate where negotiations, agreements, employees, and alleged breach were all located or occurred in New Jersey).  Specifically, LimitNone allegedly first reached out to Google in California, came to California to enter into its business relationship with Google, and demonstrated its prototype software program to Google in California (Complaint at ¶¶ 18-22).  Further, the Complaint alleges that meetings between Google personnel and LimitNone concerning LimitNone's software program occurred in California (*id.* at ¶¶ 25-27), and discussions concerning development assistance occurred in California (*id.* at ¶ 27).  Moreover, the Google Enterprise Professional Program in which LimitNone participated was run out of Google's California offices, and the Google personnel with whom LimitNone met

and interacted were located in California. *See* Complaint ¶¶ 18, 20-22, 25-28. LimitNone's choice of forum must be afforded little weight in these circumstances.

The sources of proof for the claims and defenses in this action likewise will be predominantly in California, weighing in favor of transfer. *See International Star Registry of Illinois v. Omnipoint Marketing, LLC*, 2006 WL 2598056, at *5-6 (N.D. Ill. Sept. 6, 2006) (factor favors transfer where "most evidence for this litigation" and the "situs of material events" is in the target forum). LimitNone alleges that Google committed the alleged copying and misappropriation at Google's headquarters in California, and thus, the sources of proof for the claims and defenses in this action will focus on California.

The convenience of the witnesses and parties likewise weighs in favor of transfer. *See New Hampshire Ins. Co. v. Green Dragon Trading Co.*, 2008 WL 2477484, at *7 (N.D. Ill. June 18, 2007) (convenience of parties and witnesses favored transfer where "the vast majority of the witnesses relevant to the instant action are located in" the target forum). As indicated above, the key Google personnel with knowledge of the events central to this action are located in California. *See* Complaint ¶¶ 20, 21, 25-29, 37, 50-53, 57. This further militates in favor of transfer to the Northern District of California.

Finally, both agreements require that disputes be governed by California law. *See* Ex. A ¶ 16; Ex. B ¶ 9. This too favors transfer. *Oldlaw Corp.*, 2007 WL 2772697, at *7 (facts that "the Agreement specifies Arizona law as controlling" and that "a federal court in Arizona is more familiar with Arizona law" militated in favor of transfer).

Because the Section 1404(a) factors support a transfer here, the interests of justice dictate that this action should be transferred to the Northern District of California (San Jose Division), sitting in Santa Clara County, California.[7]

---

[7] Though Section 1404(a) provides sufficient authority to transfer this case, 28 U.S.C. § 1406 provides an alternate basis. Under 28 U.S.C. § 1406, a court has the discretion to transfer a case "in the interests of justice" from a district where venue is improper to one where venue is proper. *Organ v. Byron*, 434 F. Supp. 2d 539, 543 (N.D. Ill. 2005) (finding improper venue and transferring case under § 1406 due to forum selection clause); *Lashcon, Inc. v. Butler*, 340 F. Supp. 2d 932, 936 (C.D. Ill. 2004) (transferring action under both § 1404(a) and § 1406(a));

**CONCLUSION**

Google respectfully requests that the Court dismiss LimitNone's Complaint due to improper venue pursuant to Rule 12(b)(3), or, in the alternative, transfer this action to the District Court for the Northern District of California, San Jose Division, pursuant to 28 U.S.C. § 1404(a).

DATED:  July 30, 2008

Respectfully submitted,

GOOGLE INC.


By: /s/ Rachel M. Herrick
      One of Its Attorneys

Michael T. Zeller (ARDC No. 6226433)
QUINN EMANUEL URQUHART OLIVER
 & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
(213) 443-3100 (fax)

Rachel M. Herrick
(*Admitted Pro Hac Vice*)
QUINN EMANUEL URQUHART OLIVER
 & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
(650) 801-5000
(650) 801-5100 (fax)

Jonathan M. Cyrluk (ARDC No. 6210250)
STETLER & DUFFY, LTD
11 South LaSalle Street, Suite 1200
Chicago, Illinois 60603
(312) 338-0200
(312) 338-0070 (fax)

Attorneys for Google Inc.

---

*Oldlaw Corp.*, 2007 WL 2772697, at *7 ("[s]ection 1406(a) is one way to effect the transfer" of case removed to federal court).

## <u>CERTIFICATE OF SERVICE</u>

I, Rachel M. Herrick, an attorney, certify under penalty of perjury that I caused a copy of the forgoing document to be served on all counsel of record via the Court's CM/ECF online filing system this 30th day of July, 2008.

<u>  /s/ Rachel M. Herrick</u>

# **EXHIBIT A**

Go gle **Mutual Non-Disclosure Agreement**
V032404C.1

This Mutual Non-Disclosure Agreement ("Agreement") is made and entered into between Google Inc., for itself and its subsidiaries and affiliates ("Google"), and "Participant" identified below, individually referred to as a "Party" and collectively referred to as the "Parties". The Parties wish to exchange Confidential Information (as defined below in Section 2) for the following purpose(s): a) to evaluate whether to enter into a contemplated business transaction; and b) if the Parties enter into an agreement related to such business transaction, to fulfill each Party's confidentiality obligations to the extent the terms set forth below are incorporated therein (the "Purpose"). The Parties have entered into this Agreement to protect the confidentiality of information in accordance with the following terms:

**1.** The Effective Date of this Agreement is  02/27/2007 .

**2.** In connection with the Purpose, a Party may disclose certain information it considers confidential and/or proprietary ("Confidential Information") to the other Party including, but not limited to, tangible, intangible, visual, electronic, present, or future information such as: (a) trade secrets; (b) financial information, including pricing; (c) technical information, including research, development, procedures, algorithms, data, designs, and know-how; (d) business information, including operations, planning, marketing interests, and products; (e) the terms of any agreement entered into between the Parties and the discussions, negotiations and proposals related thereto; and (f) information acquired during any facilities tours.

**3.** The Party receiving Confidential Information (a "Recipient") will only have a duty to protect Confidential Information disclosed to it by the other Party ("Discloser"): (a) if it is clearly and conspicuously marked as "confidential" or with a similar designation;  (b) if it is identified by the Discloser as confidential and/or proprietary before, during, or promptly after presentation or communication; or (c) if it is disclosed in a manner in which the Discloser reasonably communicated, or the Recipient should reasonably have understood under the circumstances, including without limitation those described in Section 2 above, that the disclosure should be treated as confidential, whether or not the specific designation "confidential" or any similar designation is used.

**4.** A Recipient will use the Confidential Information only for the Purpose described above. A Recipient will use the same degree of care, but no less than a reasonable degree of care, as the Recipient uses with respect to its own information of a similar nature to protect the Confidential Information and to prevent: (a) any use of Confidential Information in violation of this Agreement; and/or (b) communication of Confidential Information to any unauthorized third parties. Confidential Information may only be disseminated to employees, directors, agents or third party contractors of Recipient with a need to know and who have first signed an agreement with either of the Parties containing confidentiality provisions substantially similar to those set forth herein.

**5.** Each Party agrees that it shall not do the following, except with the advanced review and written approval of the other Party:  (a) issue or release any articles, advertising, publicity or other matter relating to this Agreement (including the fact that a meeting or discussion has taken place between the Parties) or mentioning or implying the name of the other Party; or (b) make copies of documents containing Confidential Information.

**6.** This Agreement imposes no obligation upon a Recipient with respect to Confidential Information that: (a) was known to the Recipient before receipt from the Discloser; (b) is or becomes publicly available through no fault of the Recipient; (c) is rightfully received by the Recipient from a third party without a duty of confidentiality; (d) is independently developed by the Recipient without a breach of this Agreement; (e) is disclosed by the Recipient with the Discloser's prior written approval; or (f) is required to be

disclosed by operation of law, court order or other governmental demand ("Process"); provided that (i) the Recipient shall immediately notify the Discloser of such Process; and (ii) the Recipient shall not produce or disclose Confidential Information in response to the Process unless the Discloser has: (a) requested protection from the legal or governmental authority requiring the Process and such request has been denied, (b) consented in writing to the production or disclosure of the Confidential Information in response to the Process, or (c) taken no action to protect its interest in the Confidential Information within 14 business days after receipt of notice from the Recipient of its obligation to produce or disclose Confidential Information in response to the Process.

**7.** EACH DISCLOSER WARRANTS THAT IT HAS THE RIGHT TO DISCLOSE ITS CONFIDENTIAL INFORMATION. NO OTHER WARRANTIES ARE MADE. ALL CONFIDENTIAL INFORMATION DISCLOSED HEREUNDER IS PROVIDED "AS IS".

**8.** This Agreement shall remain in effect until it is terminated by either Party with thirty (30) days prior written notice. Notwithstanding the foregoing, this Agreement shall survive with respect to Confidential Information that is disclosed before the effective date of termination.

**9.** Unless the Parties otherwise agree in writing, a Recipient's duty to protect Confidential Information expires five (5) years from the date of disclosure. A Recipient, upon Discloser's written request, will promptly return all Confidential Information received from the Discloser, together with all copies, or certify in writing that all such Confidential Information and copies thereof have been destroyed. Regardless of whether the Confidential Information is returned or destroyed, the Recipient may retain an archival copy of the Discloser's Confidential Information in the possession of outside counsel of its own choosing for use solely in the event a dispute arises hereunder and only in connection with such dispute.

**10.** This Agreement imposes no obligation on a Party to exchange Confidential Information, proceed with any business opportunity, or purchase, sell, license, transfer or otherwise make use of any technology, services or products.

**11.** No Party acquires any intellectual property rights under this Agreement (including, but not limited to, patent, copyright, and trademark rights) except the limited rights necessary to carry out the Purpose as set forth in this Agreement.

**12.** Each Party acknowledges that damages for improper disclosure of Confidential Information may be irreparable; therefore, the injured Party is entitled to seek equitable relief, including injunction and preliminary injunction, in addition to all other remedies available to it.

**13.** This Agreement does not create any agency or partnership relationship. This Agreement will not be assignable or transferable by Participant without the prior written consent of Google.

**14.** This Agreement may be executed in two or more identical counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute the agreement when a duly authorized representative of each party has signed the counterpart.

**15.** This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior oral or written agreements, and all contemporaneous oral communications. All additions or modifications to this Agreement must be made in writing and must be signed by the Parties. Any failure to enforce a provision of this Agreement shall not constitute a waiver thereof or of any other provision.

**16.** This Agreement shall be governed by the laws of the State of California, without reference to conflict of laws principles. The exclusive venue for any dispute relating to this Agreement shall be in the state or federal courts within Santa Clara County, California.

| **Google Inc.** | | **Participant:** | LimitNone LLC |
|---|---|---|---|
| **By:** | | **By:** | _Raymond J. Glassman_ |
| **Name:** | | **Name:** | Raymond J. Glassmann |
| **Title:** | | **Title:** | President |
| **Address:** | 1600 Amphitheatre Parkway, Mountain View, CA  94043 | **Address:** | 1059 S. Windhill Drive, Palatine, IL  60067 |
| **Date:** | ____/____/____ | **Date:** | ____/____/____ |

(Rev. 032404)

# **EXHIBIT B**

## GOOGLE ENTERPRISE PROFESSIONAL AGREEMENT

THIS GOOGLE ENTERPRISE PROFESSIONAL AGREEMENT ("Agreement") is made as of March 8, 2007 (the "Effective Date") between Google Inc., a Delaware corporation, with its offices at 1600 Amphitheatre Parkway, Mountain View, California 94043 USA ("Google"), and LimitNone LLC, a(n) Illinois corporation, with its offices at 2033 Milwaukee Avenue, Suite 225 Riverwoods, IL 60015 ("Company").

1.  <u>Google Enterprise Professional ("GEP") Program.</u> Subject to the terms of this Agreement, Company shall participate in the Google Enterprise Professional Program (the "Program") pursuant to which it will license certain Google Enterprise Products which may include hardware, software and documentation (collectively "Products") or subscribe to certain Google-hosted services ("Hosted Services") and obtain technical services and training in order to assist Company in developing its own products and services which work in conjunction with the Products and Hosted Services. Company shall further meet the training and support requirements set forth herein and upon completion and maintenance of the certifications requirements set forth herein, Company shall be appointed a certified "Google Enterprise Professional".

**REDACTED**

Mar 09 07 05:32p    Ray Glassmann              847-963-9600          P.3

REDACTED

6. **Confidential Information.** In connection with performance of its obligations hereunder, a party may have access to information that the other party considers confidential and/or proprietary ("Confidential Information"). Confidential Information shall be limited to pricing, the terms of this Agreement and the discussions, negotiations and proposals related thereto and other information clearly and conspicuously identified as "confidential". Company acknowledges that the Product's source and object code remains a confidential trade secret of Google and/or its licensors and that Company is not entitled to review either the Product's object code or the source code for any reason at any time. Each party agrees to hold the other party's Confidential Information in confidence for a period of five (5) years from the date of disclosure. Neither party will disclose nor cause to be disclosed any Confidential Information of the other, except to those employees, agents, representatives, or contractors of the parties who require access to the Confidential Information to perform under this Agreement and who are bound by written agreement not to disclose third-party confidential or proprietary information. Furthermore, each party agrees to be responsible for any act and/or omission of any employees, agents, representatives, or contractors in breach of this Section. Each party shall protect the Confidential Information disclosed by the other party by using the same degree of care, but no less than a reasonable degree of care, that it uses to protect its own confidential information of a like nature to prevent its unauthorized use, dissemination or publication to any unauthorized third parties. A party's Confidential Information shall not include information that: (i) is or becomes publicly available through no act or omission of the other party; (ii) was in the other party's lawful possession prior to the disclosure and was not obtained either directly or indirectly from the disclosing party; (iii) is lawfully disclosed to the other party by a third party without restriction on Recipient's disclosure; or (iv) is independently developed by the other party without violation of this Agreement. Each party may disclose Confidential Information solely as needed to comply with a court order, subpoena, or other government demand (provided that it first notifies and gives the disclosing party the opportunity to challenge such court order, subpoena, or government demand). Each party acknowledges that damages for improper disclosure of Confidential Information may be irreparable; therefore, the injured party is entitled to seek equitable relief, including temporary restraining order(s) or preliminary or permanent injunction, in addition to all other remedies, for any violation or threatened violation of this Section 6.

**REDACTED**

REDACTED

9.  **Miscellaneous.** Company may not assign or otherwise transfer Company's rights or delegate Company's obligations under this Agreement, in whole or in part, without the prior written consent of Google. Any attempted assignment in derogation hereof shall be null and void. The parties hereto are and shall remain independent contractors, and nothing herein shall be deemed to create an agency, partnership, or joint venture between the parties hereto. Both parties shall be responsible for performing their respective obligations as set forth herein. Upon termination or expiration, the following Sections of this Agreement will survive: 2(a), 4, 5, 6, 7, 8 and 9. This Agreement and any claim or dispute of whatever nature arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the State of California and the federal U.S. laws applicable therein, without giving effect to any choice of law principles that would require the application of the laws of a different state. Company and Google agree to submit to the personal and exclusive jurisdiction of the courts located in Santa Clara County, California. The parties specifically exclude from application to this Agreement the United Nations Convention on Contracts for the International Sale of Goods and the Uniform Computer Information Transactions Act. If any provision of this Agreement shall be adjudged by any court of competent jurisdiction to be unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and remain enforceable between the parties. The failure of either party to act in the event of a breach of this Agreement by the other shall not be deemed a waiver of such breach or a waiver of future breaches. Any notice given under this Agreement shall be in writing and in the English language and shall be delivered by certified or registered mail, postage prepaid, return receipt requested. Notices shall be deemed given upon acknowledgment of receipt. All notices to Google must be sent to the attention of Google as set forth in this Agreement or to any other address Google specifies in writing, provided that a courtesy copy shall also be sent to the attention of the Google Legal Department for all legal notices. Notices to Company shall be sent to the address set forth above or to any other address Company specify in writing. Neither party shall be liable for failing or delaying performance of its obligations (except for the payment of money) resulting from any condition beyond its reasonable control, including but not limited to, governmental action, acts of terrorism, earthquake, fire, flood or other acts of God, labor conditions, power failures, and Internet disturbances. This Agreement and the terms or other provisions located at any Google uniform resource locators (URLs) referenced pursuant to this Agreement (which are all incorporated herein by reference), constitutes a complete, absolute integration and the entire agreement between the parties hereto relating to the subject matters of this Agreement, and supersedes all prior representations, proposals, discussions, and communications, whether oral or in writing, and all contemporaneous oral communications, and any terms contained in any related purchase order(s),or other documents pertaining to the subject matter of this Agreement shall be null and void. This Agreement may be modified only in writing signed by both parties. The parties may treat faxed documents as originals; however, this shall not preclude either party from requiring the exchange of original signatures.

IN WITNESS WHEREOF, the duly authorized representatives of the parties have executed this Google Enterprise Professional Agreement as of the Effective Date written above.

GOOGLE INC.                          COMPANY: LimitNone LLC

By: _____        By: _____

Print Name: *David Girouard*         Print Name: RAYMOND J GLASSMANN

Title: **David Girouard**            Title: PRESIDENT

Date: **VP and General Manager, Enterprise**    03/09/2007
      **Google, Inc.**

03-26-07A10:22 RCV.

Mar 09 07 05:34p       Ray Glassmann              847-963-9600            p.6

**GOOGLE ENTERPRISE PROFESSIONAL AGREEMENT ORDER FORM**

REDACTED

IN WITNESS WHEREOF, the duly authorized representatives of the parties have executed this Order Form to the Google Enterprise Professional Agreement as of the Effective Date written by Google below.

**GOOGLE INC.**

By: _____

Print Name: _____

Title: _____

Order Form Effective Date: _____

**David Girouard**
**VP and General Manager, Enterprise**
**Google, Inc.**

Google Enterprise Professional Agreement Order Form
Google Apps Premier Edition

**COMPANY: LimitNone LLC**

By: _Raymond Glassman_

Print Name: RAYMOND J (GLASSMANN)

Title: PRESIDENT

Date: 03/09/2007

Page 1 of 1

02/15/2007
Google Confidential

03-26-07A10:23 RCVD