IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LIMITNONE, LLC, a Delaware Limited
Liability Company,

                Plaintiff,

      v.

GOOGLE INC., a Delaware Corporation,

           Defendant.

Case No. 08-cv-04178

Honorable Blanche M. Manning

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  FACTS ............................................................................................................ 2

    A.  The Scope of the NDA. ............................................................................ 2

    B.  The Scope of the GEP Agreement. ......................................................... 3

    C.  The Scope of the Beta License Agreement. ............................................ 4

    D.  The Scope of the LimitNone License Agreement. .................................. 5

    E.  LimitNone's Claims Against Google. ...................................................... 6

III.  STANDARD OF REVIEW ................................................................................ 6

IV.  ARGUMENT .................................................................................................... 7

    A.  If Any Forum-Selection Clause Applies, It Is That of the LimitNone License Agreement Based on the Scope of That Agreement. .................................... 7

    B.  The Google Agreements Have Been Superseded by Later Agreements. ......................... 10

    C.  The NDA Never Was a Valid and Enforceable Agreement. ............................. 12

    D.  The Forum Selection Clause in the GEP Agreement is Not Enforceable. ...................... 13

        1.  Permissive or Mandatory Forum Selection Clause Language. ..................... 13

        2.  Scope of Claims or Disputes Encompassed by the Forum Selection Clauses. ............. 14

        3.  Forum Selection Clauses Will Not be Enforced if Unreasonable. ................. 16

    E.  Google's Motion to Transfer the Action is Inappropriate. ................................. 18

V.  CONCLUSION .................................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Takeda Pharmaceutical Co. Ltd.*, 476 F.3d 421 (7th Cir. 2007) ..................... 7, 15

*Aramark Mgmt. Serv. Ltd v. Martha's Vineyard Hosp.*, No. 03-CV-1642,
    2003 WL 21476091 (N.D.Ill. June 23, 2003) ......................................................... 14

*Beissbarth USA, Inc. v. KW Products, Inc.*, No. 04-C-7738, 2005 WL 38741
    (N.D. Ill. Jan. 6, 2005) ............................................................................................... 14

*Ben-Zvi v. Edmar Co.,* 40 Cal. App. 4th 468 (2005) .......................................................... 8

*Bremen v. Zapata Off-Shore*, 407 U.S. 1 (1972) ........................................................... 16

*Calanca v. D&S Manufacturing Co.*, 157 Ill. App. 3d 85 (lst Dist. 1987) ........................... 13, 17

*Clinton v. Janger*, 583 F.Supp. 284 (N.D.Ill. 1984) ....................................................... 17

*Continental Casualty Co. v. LaSalle Re Ltd.*, 500 F.Supp.2d 991 (N.D.Ill. 2007) ..................... 7

*Courtois v. Millard*, 174 Ill. App. 3d 716 (5th Dist. 1988) ............................................ 10, 11

*Dearborn Industrial Mfg. Co. v. Soudronic Finanz AG*, No. 95-C-4144, 1997 WL 156589
    (N.D.Ill. April 1, 1997) ............................................................................................. 14

*Dolezal v. Plastic and Reconstructive Surgery*, 266 Ill. App. 3d 1070
    (1st Dist. 1994) ........................................................................................... 8, 9, 10, 11

*Dye v. Wargo*, 253 F.3d 296 (7th Cir. 2001) ................................................................ 12

*Frangipani v. Boeker*, 64 Cal. App. 4th 860 (1998) ................................................... 10, 11

*FUL Inc. v. Unified School Dist. No. 204*, 839 F.Supp. 1307 (N.D.Ill. 1993) ..................... 18, 19

*Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989) ..................... 7

*Hubble v. O'Connor,* 291 Ill .App. 3d 974 (1st Dist. 1997) ............................................. 13

*Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993) ................................................ 15

*IFC Credit Corp. v. Rieker Shoe Co*rp., 378 Ill. App. 3d 77 (lst Dist. 2007) ...................... 13

*J.F. McKinney & Assoc., Ltd. v. General Electric Investment Corp.*, 183 F.3d 619
    (7th Cir. 1999) ......................................................................................................... 12

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) .............................................. 7

*Magellan Intern. Corp v. Salzgitter Handel GMBh*, 76 F.Supp.2d 919 (N.D.Ill. 1999) ............... 6

*Magnus v. Lutheran General Health Care System*, 235 Ill. App. 3d 173 (1st Dist. 1992)........... 10

*Mayfair Construction Co. v. Waveland Associates*, 249 Ill. App. 3d 188 (1st Dist. 1993)............ 8

*Miglin v. Mellon*, No. 07-C-6863, 2008 WL 2787474 (N.D.Ill. July, 17, 2008)......................... 19

*Muzumdar v. Wellness International Network, Ltd.*, 478 F.3d 759 (7th Cir. 2006) ...................... 7

*Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372 (7th Cir. 1990) ........................................ 6

*Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App. 3d 31 (1st Dist. 1993) .......... 8

*Omron Healthcare Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600 (7th Cir. 1994)..................... 7, 15

*Paper Exp., Ltd v. Pfankuch Maschinen,* 972 F.2d 753 (7th Cir. 1992).......................... 13, 14, 16

*Penn, LLC v. New Edge Network, Inc.*, No. 03-C-5496, 2003 WL 22284207
    (N.D.Ill. Oct. 3, 2004)......................................................................................................... 15

*Petri v. Gatlin*, 997 F.Supp. 956 (N.D.Ill. 1997) ........................................................................... 6

*Spenta Ent., Ltd. v. Coleman*, No. 08-C-0495, 2008 WL 2959935 (N.D.Ill. Aug. 4, 2008) ........ 16

*Wilder v. Wilder*, 138 Cal. App. 2d 152 (1955) ........................................................................... 8

**STATUTES**

28 U.S.C. § 1404(a) .............................................................................................................. 18, 19

Electronic Commerce Security Act, 5 ILCS 175/5-110 ................................................................. 5

Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1 .......................... 6

Illinois Trade Secret Act, 765 ILCS 1065/1 ................................................................................. 6

## I.    **INTRODUCTION**

Google's attempt to thwart LimitNone's well-established right to choose its own forum should be denied for at least four reasons.  First, to the extent that any contractual provision governs venue in this matter,[1] it would be the forum selection clause found in the LimitNone Inc. End User License Agreement and Warranty Disclosure ("LimitNone License Agreement", attached hereto as Exhibit A), which unambiguously designates jurisdiction and venue in Illinois.[2]   The LimitNone License Agreement most closely relates to the subject matter of LimitNone's Complaint, was executed most recently, and by its express terms "supersedes" any and all prior written contracts, including the two instruments offered up by Google – the Mutual Non-Disclosure Agreement (the "NDA", attached hereto as Exhibit B) and the Google Enterprise Professional Agreement (the "GEP Agreement", *see* Docket No. 29, filed under seal).

Second, even if Google could wish away the LimitNone License Agreement, the two boilerplate, Google-authored documents relied upon by Google still would not circumvent venue in Illinois.  As a threshold matter, these two documents are not germane to the subject mater of LimitNone's claims in this case.  The generic scope of these two alleged agreements has nothing to do with the deliberate and calculated scheme by Google to steal LimitNone's trade secrets, as alleged in this case.  By their terms, the NDA and GEP Agreements did not purport to dictate and govern all future business dealings between the parties; rather the language of the two documents has very limited application and is, if anything, interested more in the treatment of Google's own proprietary information than anything else.  Without question, the tort-based claims asserted against Google in this case go far beyond anything contemplated in the two Google instruments.

---

[1]   LimitNone does not assert a claim for breach of contract, and therefore LimitNone does not believe that venue in this matter is dictated by any forum selection clause.

[2]   Exhibit A is a screen shot of the first page of the click-through agreement and a reproduction of the full text of the electronic version of the agreement that resides on the gMove software.

Google cannot use its boilerplate documents to try to shield itself from its own tortiuous conduct.

Third, neither the NDA nor the GEP Agreement are enforceable as a mater of law.  In addition to being rote, boilerplate templates that are always construed against the drafter – particularly where, as here, the drafter has vastly superior bargaining power – the NDA was not signed or accepted by Google, and lacked consideration.  Likewise, the GEP Agreement and its forum selection clause is further unenforceable because the clause is permissive (not mandatory).

Finally, with regard to Google's fall-back attempt to transfer venue, Google fails to meet the burden of proof required to overcome LimitNone's choice of forum and transfer this case to California.  Particularly where this Court's subject matter jurisdiction is itself in question, using self-serving language from disputed agreements is insufficient to transfer this case from Illinois. The claims alleged in LimitNone's Complaint do not exclusively arise out of any of the agreements executed between the parties; no agreement prevents LimitNone from bringing the claims alleged in the Complaint in the Circuit Court of Cook County.  Accordingly, Google's motion should be denied.

## II.    FACTS

Google and LimitNone's business relationship began in February 2007 and effectively ended following Google's announcement of the release of the Google Email Uploader in December 2007.  During their business relationship, Google and LimitNone exchanged at least four separate documents, each having its own purpose and scope, as addressed below.

### A.    The Scope of the NDA.

The NDA recites an effective date of February 27, 2007, though it is not endorsed by Google.  (NDA, ¶1.)   The NDA concerns the exchange of confidential information *in contemplation of entering into a business transaction*. *Id*., Preamble (emphasis added).  The NDA states that confidential information would only be used for the "Purpose" defined in the

agreement, which is defined as: "a) to evaluate whether to enter into a contemplated business transaction; and b) if the Parties enter into an agreement related to such business transaction, to fulfill each Party's confidentiality obligations to the extent the terms set forth below are incorporated therein…" (*Id.*)  Later, the parties entered into the GEP Agreement, though the terms of the GEP Agreement reveal that none of the terms of the NDA were expressly incorporated.[3]  By its own terms, the forum-selection clause does not survive, since the NDA's only survival clause concerns Confidential Information. (*See Id.*, ¶8.)

**B.    The Scope of the GEP Agreement.**

The GEP Agreement was entered into by the parties on March 8, 2007, and expired by its own terms one year after execution.  This agreement grants a license to LimitNone to use certain Google hardware, software, and documentation ("Products"), provides a subscription for Google's Hosted-Services, and is an agreement for technical service and training to be provided by Google.  (GEP Agreement, ¶1.)  The GEP Agreement is a boilerplate, Google form-agreement designed to protect Google's intellectual property by governing its disclosure to third-party partners who participate in the GEP Program.  There is no language in the GEP Agreement that contemplates or protects the intellectual property of the third-party partners; *i.e.*, (a) there are no grants or licenses provided by the third-parties to Google in the GEP Agreement, and (b) there are no intellectual property provisions in the GEP Agreement that restrict Google's use of or grant any rights in the third-parties' intellectual property – only Google's intellectual property is referenced and protected by the GEP Agreement. (*See Id.*, ¶4.)  While the GEP Agreement contains mutual promises to protect confidential information, it is not clear on its face whether

---

[3]    The NDA provides that it shall remain in effect until terminated.  However, since the NDA has achieved its "Purpose" (*i.e.*, facilitated the exchange of information so that the parties could enter into a business transaction) and since none of the NDA terms were expressly incorporated into the GEP, the NDA was superseded in its entirety by the GEP Agreement.

these promises relate solely to information predicated on the subject matter of the GEP Agreement. The agreement states that "[c]onfidential information shall be limited to pricing, the terms of this Agreement, and the discussions, negotiations and proposals related thereto and other information clearly and conspicuously identified as 'confidential'." (*Id.*, ¶6.) Moreover, the agreement defines Confidential Information as being "[i]n connection with performance of [a party's] obligations hereunder…" (*Id.*)

The GEP Agreement's forum-selection clause provides that "Company [*i.e.*, LimitNone] and Google agree to submit to the personal and exclusive jurisdiction of the courts located in Santa Clara County, California." (*Id.*, ¶9.) Contrary to Google's assertions, nothing in the GEP Agreement makes it clear that it "broadly covers the entire scope of LimitNone's participation [in] the Google Enterprise Program," let alone relationships that go beyond the GEP Program. (Google Memorandum, pp.5-6.)

### C.    The Scope of the Beta License Agreement.

A Beta License Agreement ("Beta Agreement") was entered into by LimitNone and Google on May 20, 2007, when LimitNone sent the beta version of gMove to Scott McMullen at Google, and McMullan initiated and used the beta version of gMove. ("Beta Agreement", a copy of which is attached hereto as Exhibit C.)[4] The Beta Agreement granted Google a limited of version 1.0 gMove software. Google, acting through its employees and officers, gave its electronic consent[5] to the Beta Agreement as a condition of its operation and upon each update of

---

[4]  Exhibit C is a reproduction of the full text of the electronic version of the agreement that resided on the beta version of the gMove software.

[5]  The Beta Agreement and the LimitNone License Agreement both contained what is commonly referred to as "click wrap" agreements, the consent to which was required to access gMove. A click wrap agreement obtains the users' consent to the terms of the agreement by requesting that the user accept or decline to the terms of the agreement. With gMove, after the first installation, the software was automatically updated whenever gMove was used and the click wrap agreement was initiated on every update.

the software.[6]    The Beta Agreement contains no forum-selection clause.    However, the Beta

Agreement states that it "shall be governed, construed and enforced in accordance with the laws

of the United States and of the State of Illinois."    (Beta Agreement, ¶5.)

    **D.**    **The Scope of the LimitNone License Agreement.**

      The LimitNone License Agreement is the final agreement between the parties and was

first entered into on or before September 23, 2007, when Google (by Brian Caprini) received and

initiated a copy of gMove 1.0.    Google electronically consented to this agreement as a condition

of its operation on numerous occasions in the same fashion as it did with the Beta Agreement.[7]

The LimitNone License Agreement provides a license grant by LimitNone to Google (as an end

user) to operate the gMove software.    The LimitNone License Agreement deems confidential and

proprietary "any and all information obtained during … lawful reverse engineering and/or

decompiling activities, including but not limited to, the organization, logic, algorithms and

processes of the Software…" (LimitNone License Agreement at p.2.)    The LimitNone License

Agreement further provides that "[t]his Agreement contains the complete understanding between

the parties with respect to the subject matter hereof, and supersedes all prior or contemporaneous

Agreements or understandings, whether oral or written." (*Id*. at p.4.)

      The LimitNone License Agreement forum selection clause provides: "[y]ou hereby

consent to the exclusive jurisdiction and venue of the state courts sitting in Lake County, Illinois

or the federal courts in the Northern District of Illinois to resolve any disputes arising under this

Agreement." (*Id*.)    The LimitNone License Agreement also states that it shall be governed by

---

[6]    *See* Electronic Commerce Security Act, 5 ILCS 175/5-110 ("Information, records, and signatures shall not be denied legal effect, validity, or enforceability solely on the grounds that they are in electronic form.").

[7]    The terms of the LimitNone License Agreement were accepted by Google employees and officers on behalf of Google on multiple occasions, including: March 2, 2008, by Ed Yong; February 22, 2008, by Francisco Gioielli; January 28, 2008, by Isabella Pighi; December 19, 2007, by Ben Chang; October 17, 2007, by Chaim Fried; September 23, 2007, by Brian Caprini.

the laws of the State of Illinois. (*Id.*)

### E.    LimitNone's Claims Against Google.

LimitNone's Complaint asserts a misappropriation of trade secrets claim in violation of the Illinois Trade Secret Act, 765 ILCS 1065/1 *et seq.*[8], and a violation of the Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*[9] against Google related to LimitNone's gMove software.  LimitNone did not assert any claims for breach of any contract or file suit based on any agreement allegedly or actually entered into by LimitNone and Google.  As addressed below, to the extent that any agreement is applicable in this case, it is the LimitNone License Agreement, which provides for exclusive jurisdiction and venue in Illinois.  However, LimitNone's dispute with Google goes well beyond the scope of the LimitNone License Agreement and, instead, is addressed to behavior that is specifically covered by two Illinois statutes.

### III.    STANDARD OF REVIEW

The question before the Court in forum selection clause interpretation is not whether the given venue is the most convenient place for trying the suit, but "whether the defendants consented to be sued in [the venue] and by doing so waived their right to object to the jurisdiction of the courts (including federal courts)…" *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990).

Principles of contract law guide the court's interpretation of forum selection clauses. *See Northwestern Nat'l*, 916 F.2d at 375, *citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1

---

[8]   The elements for a violation of trade secrets misappropriation are that the information (1) was indeed a trade secret; (2) was misappropriated; and (3) was used in defendant's business. *Magellan Intern. Corp v. Salzgitter Handel GMBh*, 76 F.Supp.2d 919 (N.D.Ill. 1999).

[9]   The elements of a violation of the Deceptive Business Practices Act are that "(1) defendant committed a deceptive act, such as the misrepresentation or concealment of a material fact; (2) the defendant intended to induce the plaintiff's reliance on the deception; and (3) the deception occurred in the course of conduct involving trade or commerce." *Petri v. Gatlin*, 997 F.Supp. 956, 967 (N.D.Ill. 1997).

(1972) and *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989); *see also Muzumdar v. Wellness International Network, Ltd.*, 478 F.3d 759, 762 (7th Cir. 2006). Courts will not enforce a forum selection clause where it merely specifies jurisdiction as permissive, as opposed to clauses that specify venue as mandatory or obligatory. *Id.; see also Continental Casualty Co. v. LaSalle Re Ltd.*, 500 F.Supp.2d 991, 994 (N.D.Ill. 2007). Once a forum selection clause is found to be enforceable, *i.e.* it is mandatory, the analysis turns to whether the disagreement between the parties relates to the scope of the agreement. *See Omron Healthcare Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994). In determining the scope of a forum selection clause, the Seventh Circuit has held that all disputes the resolution of which arguably depend on the construction of an agreement arise out of that agreement for purposes of a forum selection clause. *Id.* (citations omitted).

## IV.  ARGUMENT

No valid and applicable agreement between the parties requires that LimitNone bring its suit against Google in Santa Clara County, California. As such, LimitNone was free to and within its rights to bring suit against Google in the Circuit Court of Cook County, Illinois.

### A.   If Any Forum-Selection Clause Applies, It Is That of the LimitNone License Agreement Based on the Scope of That Agreement.

Assuming for the sake of argument that LimitNone's Complaint is controlled by a forum-selection clause in any of the four agreements between the parties, the LimitNone License Agreement would be controlling. Under both California and Illinois law, the court will look to the language of the agreement to reflect the intended subject matter.[10] *See Omnitrus Merging*

---

[10]  *Abbott Labs. v. Takeda Pharmaceutical Co. Ltd.*, 476 F.3d 421, 423 (7th Cir. 2007), suggests that a contract's choice of law applies to the interpretation and validity of forum selection clauses, but did not resolve the issue. Here, California and Illinois are substantially similar with regard to the construction of these clauses.

*Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App. 3d 31, 34 (1st Dist. 1993); *Ben-Zvi v. Edmar Co.,* 40 Cal. App. 4th 468, 473 (2005). Where two or more provisions of a contract concern the same subject matter, the more specific provision will prevail. *See Dolezal v. Plastic and Reconstructive Surgery*, 266 Ill. App. 3d 1070, 1081 (1st Dist. 1994) (specific later agreement prevailed over earlier general agreement); *Wilder v. Wilder*, 138 Cal. App. 2d 152, 158 (1955) ("The general rule is that if a general and specific provision are inconsistent, the specific provision will control.").

In *Dolezal*, the court examined an employment action that involved four separate agreements, including an early letter agreement containing general employment terms and a later employment agreement with specific employment termination terms. The court noted that, even if all agreements were aggregated to find a total employment agreement, the more specific terms of the later agreement must prevail because to find otherwise "would contradict the well-settled rules of contract construction, that all provisions are presumed to have been inserted for a purpose, and that a contract should be interpreted to give meaning and effect to each provision contained therein." *Dolezal*, 266 Ill. App. 3d at 1081, *citing Mayfair Construction Co. v. Waveland Associates*, 249 Ill. App. 3d 188 (1st Dist. 1993). Thus, *Dolezal* held that the provisions of the later, more specific agreement controlled. *Id.* at 1082.

Here, LimitNone is asserting claims against Google for misappropriation of trade secrets and deceptive business practices concerning the gMove software. The most recent and more specific agreement controls. The LimitNone License Agreement (and previously, the Beta Agreement that it superseded) is the only enforceable agreement that specifically references the gMove software and the protection of trade secrets and proprietary information related to gMove. (*See generally*, LimitNone License Agreement.) The agreement also provides that "[t]his

Agreement contains the ***complete understanding between the parties with respect to the subject matter hereof***, and supersedes all prior or contemporaneous Agreements or understandings, whether oral or written." *Id*. at 4 (emphasis added). The LimitNone License Agreement was the last agreement entered into by the parties. Thus, the LimitNone License Agreement specifically concerns the gMove software and gMove confidential and proprietary information is the subject matter of the license agreement, and is the later of the agreements.[11]  Because the LimitNone License Agreement mandates exclusive venue in Illinois, dismissal for improper venue would be inappropriate.

While Google claims that either the GEP Agreement or the NDA concern the subject matter of the LimitNone's action, in fact, neither the GEP Agreement nor the NDA refer to LimitNone's gMove software, either implicitly or explicitly. Google's sole claim is that the GEP Agreement is implicated because the Enterprise Agreement "broadly covers the entire scope of LimitNone's participation [in] the Google Enterprise Program." (Google Memorandum, pp.5-6.) However, LimitNone's Complaint has nothing to do with LimitNone's participation in the Google Enterprise Program in any substantive sense. The present dispute concerns Google's misappropriation of gMove trade secrets and proprietary information – which goes well beyond the scope of LimitNone's participation in the GEP Program. The law holds that the more specific provisions of the LimitNone License Agreement prevail over the general provisions of the GEP Agreement. *See Dolezal*, 266 Ill. App. 3d at 1081. Furthermore, Google's conclusory assertion that the NDA applies to LimitNone's claims because "it covers the exchange of confidential information between the parties – including 'trade secrets,' 'technical information,' 'designs,' and 'products' – as the parties explored a potential business relationship" is incorrect.

---

[11]  The Beta Agreement's subject matter similarly concerns the gMove software. (*See* Beta Agreement, ¶¶2, 3, 4.)

The NDA is even less specific than the GEP Agreement, and was superseded first by the GEP Agreement and later by the Beta Agreement and LimitNone License Agreement.

**B.    The Google Agreements Have Been Superseded by Later Agreements.**

Google very obviously avoids mention of the Beta Agreement and the LimitNone License Agreement, no doubt because both of those agreements superseded the NDA and the GEP Agreement and consequently place jurisdiction and venue properly in Illinois.  To the extent that any of the four agreement are controlling, the forum selection clause of the LimitNone License Agreement prevails based on rules of contract interpretation regarding superseding clauses and based on the superseding language contained in the agreement itself (to which Google consented).

"Under Illinois law, a complete, valid, written contract merges and supersedes all prior and contemporaneous negotiations and agreements dealing with the same subject matter." *Dolezal*, 266 Ill. App. 3d at 1081, *citing Courtois v. Millard*, 174 Ill. App. 3d 716, 720 (5th Dist. 1988) and *Magnus v. Lutheran General Health Care System*, 235 Ill. App. 3d 173 (1st Dist. 1992).  Similarly, the courts of California also apply this standard rule of contract construction. *See, e.g., Frangipani v. Boeker*, 64 Cal. App. 4th 860, 863 (1998) ("Where there is an inconsistency between two agreements both of which are executed by all of the parties, the later contract supersedes the former.").

In *Courtois v. Millard*, 174 Ill. App. 3d 716 (5th Dist. 1988), the court examined a rescission action where the parties executed different contracts several months apart concerning the same piece of real estate, and only the earlier contract contained warranty clauses that were sought to be enforced.  *Courtois*, 174 Ill. App. 3d at 717.  The court rejected the defendants' assertions that the two contracts must be construed together, stating that "[t]his contention fails because the first and second contracts are distinguishable from each other and contain

inconsistent terms. Only one of the two contracts could be valid." *Id.* at 721 (finding that the later contract superseded the earlier contract.) .

Similarly, only one forum selection clause can be valid in this case. Assuming, *arguendo*, that all four of the agreements touch the subject matter of LimitNone's suit (which they do not), Google's agreements would fall. The NDA purportedly was effective February 27, 2007, and provides for a Santa Clara County, California forum, but the NDA was superseded and terminated upon the execution of the GEP Agreement. (NDA, ¶¶1, 16.) The GEP Agreement was effective March 8, 2007, also provides for a Santa Clara County, California, and expired by its own terms within one year. (GEP Agreement, Preamble, ¶9.)

After the effective dates of these agreements, LimitNone and Google entered into the Beta Agreement, which was effective on May 20, 2007 and, while it does not provide a forum, it does provide for Illinois law to control. (Beta Agreement, at p.1.) Finally, the LimitNone License Agreement, which was repeatedly accepted by employees and officers on behalf of Google between September 23, 2007, and March 2, 2008, is the last, and therefore controlling, agreement between the parties and provides for exclusive jurisdiction and venue in Illinois. (LimitNone License Agreement, at p.4.)

Pursuant to Illinois and California law, any provisions in the LimitNone License Agreement that are inconsistent with earlier agreements will supersede and prevail. *See Dolezal*, 266 Ill. App. 3d at 1081; *Courtois*, 174 Ill. App. 3d at 720; *Frangipani*, 64 Cal. App. 4th at 863. Clearly, the LimitNone License Agreement forum selection clause provision is inconsistent with the prior and superseded forum selection clauses of the NDA and GEP Agreement. Furthermore, there is no doubt that the LimitNone License Agreement was understood and intended by the parties to supersede all earlier agreements. (*See*, LimitNone License Agreement at p.4, "[t]his

Agreement … supersedes all prior or contemporaneous Agreements or understandings, whether oral or written."). Consequently, to the extent that any of the forum selection clauses apply, the forum selection clause of the LimitNone License Agreement must be controlling, as it is the most recent agreement and is inconsistent with the earlier forum selection clauses.

### C.    The NDA Never Was a Valid and Enforceable Agreement.

Google admits that it does not possess a copy of the NDA that was executed by Google and does not claim to have conveyed its acceptance of the NDA to LimitNone at any time. Under these circumstances, the NDA is deemed a lapsed agreement that cannot and should not be enforced for any purpose, much less for forcing LimitNone into a forum that is not of its choice. "Illinois uses an objective theory of contract under which understandings and beliefs are effective only if shared." *J.F. McKinney & Assoc., Ltd. v. General Electric Investment Corp.*, 183 F.3d 619, 622 (7th Cir. 1999). "It is not enough to get halfway to a contract and then hope that the jury will complete the process; the parties themselves must show assent." *Id.* Here, Google is hoping that the Court will "complete the process" and assume that Google assented to the NDA – and conveyed the same assent to LimitNone. This is not appropriate.

LimitNone denies that Google ever conveyed its assent to the NDA or in any way indicated that the NDA was considered effective. In order to demonstrate that a contract has been formed, Google is required to present more proof. Even the two cases relied upon by Google for the proposition that the NDA may be enforced by Google despite its failure to execute it, state that there must be offer and acceptance in order for the contract to be enforceable without a signature of one of the parties.[12]

---

[12]    In addition, the cases cited by Google are factually distinguishable. *Dye v. Wargo*, 253 F.3d 296 (7th Cir. 2001) involved a release signed by a prisoner which was not countersigned by the government entity, nonetheless the court recognized that "mutual assent" is required but where there was evidence that the government entity accepted the release during the course of the plea negotiations, and thus, found the

In the alternative, as argued herein, if the NDA ever was effective, it expired by its own terms after the parties executed the GEP Agreement. Thereafter, both the NDA and the GEP Agreement were superseded by the Beta Agreement and the LimitNone License Agreement.

**D.    The Forum Selection Clause in the GEP Agreement is Not Enforceable.**

The forum selection clause of the GEP Agreement is not enforceable because the clause is permissive, the subject matter of the Complaint is outside the scope of the GEP Agreement and enforcement of the same would be unreasonable.[13]    A court will generally only enforce a forum-selection clause where (1) the forum selection clause is mandatory and not permissive; (2) the asserted claims are within the scope of the agreement; and (3) the forum-selection clause is not unreasonable. *See Paper Exp., Ltd v. Pfankuch Maschinen*, 972 F.2d 753, 755-758 (7th Cir. 1992); *Calanca v. D&S Manufacturing Co.*, 157 Ill. App. 3d 85, 87-90 (lst Dist. 1987); *IFC Credit Corp. v. Rieker Shoe Co*rp., 378 Ill. App. 3d 77, 86-87 (lst Dist. 2007).    The GEP Agreement's forum selection clause fails each level of this analysis, while, in contrast, the LimitNone License Agreement satisfies each of these conditions. Thus, the LimitNone License Agreement is enforceable against Google to the extent that any of the forum selection clauses apply.

**1.    Permissive or Mandatory Forum Selection Clause Language.**

A mandatory forum-selection clause vests exclusive venue in a forum; a permissive forum selection clause merely consents to be sued in a particular forum, but permits suit in other

---

release enforceable. No such evidence of assent by Google exists in this case. *Hubble v. O'Connor,* 291 Ill .App. 3d 974 (1st Dist. 1997), involved a real estate contract, and noted that the first consideration was whether there was a valid contract ("contract formation requires only the existence of an offer, an acceptance, and consideration").

[13]    For purposes of this analysis, because the NDA expired by its own terms and was otherwise unenforceable when the GEP Agreement was executed, only the forum selection clause of the GEP Agreement will be analyzed in comparison to the forum selection clause of the LimitNone License Agreement.

forums as well.  *See Paper Express, Ltd*, 972 F.2d at 755-758.   The GEP Agreement fails to provide for mandatory venue.  Instead, it only provides for jurisdiction by employing permissive language, stating: "the Company and Google agree to submit to the personal and exclusive jurisdiction of the courts located in Santa Clara County, California."  (GEP Agreement, ¶9). Under that provision, the parties merely agreed that they could not dispute the jurisdiction of the courts in Santa Clara County, California – it does not affirmatively state that the parties consented to a specific venue.  *See Aramark Mgmt. Serv. Ltd v. Martha's Vineyard Hosp.*, No. 03-CV-1642, 2003 WL 21476091, at *3 (N.D.Ill. June 23, 2003) (the clause "The parties agree to submit to the jurisdiction of the courts with in the State of Illinois" found to be permissive), ; *Beissbarth USA, Inc. v. KW Products, Inc.*, No. 04-C-7738, 2005 WL 38741, at *3 (N.D. Ill. Jan. 6, 2005) (clause providing "Each of the parties hereto irrevocably submits to the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division, or the Illinois States Court in Cook County for any action suit or proceeding arising out of or in connection with the transactions contemplated by the Agreement" found to be permissive), .

In contrast, the LimitNone License Agreement contains the following mandatory forum selection clause language: "[y]ou hereby consent to the exclusive jurisdiction and venue of the state courts sitting in Lake County, Illinois or the federal courts in the Northern District of Illinois to resolve any disputes arising under this Agreement."  (LimitNone License Agreement, p.4.)  Thus, the agreement uses obligatory language to create a mandatory venue selection.

2.    **Scope of Claims or Disputes Encompassed by the Forum Selection Clauses.**

Even where mandatory, a forum selection clause will only apply to a subject matter covered by the scope the forum selection clauses.  *See Dearborn Industrial Mfg. Co. v. Soudronic Finanz AG*, No. 95-C-4144, 1997 WL 156589, at *4 (N.D.Ill. April 1, 1997) .  The

court will enforce a forum selection clause of an agreement where interpretation of that agreement is required or where the duty sought to be enforced arises out the contract. *Omron Healthcare, Inc. v. Maclaren,* 28 F.3d 600, 602 (7th Cir. 1994); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993). A claim will be considered within the scope of an agreement where enforcement of a provision is clearly a defense to the claim. *Penn, LLC v. New Edge Network*, *Inc.*, No. 03-C-5496, 2003 WL 22284207, at *2 (N.D.Ill. Oct. 3, 2004). Moreover, the court examines the asserted claims in the context of the disputed relationship. *See Abbott Labs. v. Takeda Pharm. Co. Ltd.*, 476 F.3d 421, 424 (7th Cir. 2007). And, the courts have expressly rejected a "but-for" causation requirement analogy to interpret forum selection clauses. *Omron Healthcare, Inc.*, 28 F.3d at 602.

LimitNone is asserting claims against Google for misappropriation of trade secrets and deceptive business practices based on the gMove software – the subject of the LimitNone License Agreement and the Beta Agreement, the only agreements of the four between the parties that expressly concern the gMove software. Consequently, the LimitNone License Agreement and the Beta Agreement are the only agreements that arguably address the specific issues raised in the Complaint. The LimitNone License Agreement superseded the Beta Agreement and explicitly states the scope of its forum selection clause is "to resolve any disputes arising under this Agreement." (LimitNone License Agreement, p.4.) Thus, if it is determined that a contract controls venue and jurisdiction in this case, the LimitNone License Agreement would be the most applicable because its scope concerns the very gMove software that is the subject of this lawsuit.

In contrast, the GEP Agreement does not address software provided by third-party developers, let alone gMove in particular. Rather, the GEP Agreement is a typically one-sided

form contract, designed and drafted by Google to protect Google's interests in the event it is required to share any Google confidential information with a third party pursuant to a collaboration under the GEP Program.[14]  By its terms, the GEP Agreement was never intended to protect LimitNone.[15]  The GEP Agreement was executed by the parties before any substantive business relationship was formed between Google and LimitNone concerning gMove, and could have applied to any number of projects being considered by LimitNone and Google.  Indeed, the parties were involved in several other ventures regarding LimitNone's iBuild and gShare products.  LimitNone's claims do not arise out of or under the GEP Agreement, and they do not require any the interpretation of any duty or obligation arising under the contract.

### 3.     Forum Selection Clauses Will Not be Enforced if Unreasonable.

Enforcement of the GEP Agreement forum selection clause would be unreasonable. "Like any contract provision, a forum-selection clause will be enforced unless the enforcement would be unreasonable or unjust or the provision was procured by fraud or overreaching." *Paper Exp., Ltd*, 972 F.2d at 757, *citing Bremen v. Zapata Off-Shore*, 407 U.S. 1, 10 (1972).  The federal courts and Illinois courts apply a substantially similar unreasonableness test for forum selection clauses based on the test set forth in *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1.  *See Spenta Ent., Ltd. v. Coleman*, No. 08-C-0495, 2008 WL 2959935, at *4 (N.D.Ill. Aug. 4, 2008).

Under Illinois law, the court will consider six factors to determine whether a forum selection clause is reasonable:

> (1) the law that governs the formation and construction of the contract, (2) the residency of the parties, (3) the place of execution and/or performance of the contract, (4) the location of the parties and their witnesses, (5) the inconvenience to the parties of any

---

[14]     It is understood that every GEP Partner is required to sign this same agreement before being allowed even to participate in the GEP Program.

[15]     For example, *see* Section 2, Section 4, Section 7, Section 8, and Section 9, which restricts LimitNone's ability to assign the agreement, but places no such reciprocal restrictions on Google.

particular location, and (6) whether the clause was bargained for.

*Calanca,* 157 Ill. App. 3d at 88; *Clinton v. Janger,* 583 F.Supp. 284, 289 (N.D.Ill. 1984).

An analysis of the foregoing factors demonstrates the unreasonableness of the GEP Agreement forum selection clause, particularly when viewed against the LimitNone License Agreement. First, the governing law under the LimitNone License Agreement is Illinois law. The GEP Agreement, in contrast, is governed by California law. Second, LimitNone is a resident of Delaware, with is two shareholders residing in Illinois, and Google is a resident of Delaware, with headquarters in California and offices throughout the world. However, Google has substantial contacts in Illinois, maintains an office and a registered agent in Illinois, does extensive business in Illinois aside from its interaction with LimitNone, and would satisfy the "minimum contacts" standard in Illinois. Conversely, LimitNone's only contact with California is its interaction with Google. Third, the LimitNone License Agreement was the end product of Google's contacts in both Illinois and California with LimitNone. Fourth, LimitNone and Google have witnesses in both Illinois and California. However, Google is a Fortune 150, multi-national corporation with extensive business ties to Illinois. Google could not claim to be "seriously inconvenienced" by defending claims in Illinois. In contrast, LimitNone is a small limited liability company, with two principles who are both residents of Illinois, and no other employees, with extremely limited financial resources and assets. Fifth, based on the afore-mentioned disparity of wealth and resources, and because Google bargained for and agreed to Illinois as an exclusive jurisdiction and venue in the LimitNone License Agreement, Google cannot claim to be "seriously inconvenienced" by defending LimitNone's action in Illinois.

Based on the foregoing factors, enforcement of the forum selection clause of the LimitNone License Agreement would be reasonable; while enforcement of the forum selection clause of the GEP Agreement would be unreasonable.

E.    **Google's Motion to Transfer the Action is Inappropriate.**

Google has not satisfied the standards set forth in 28 U.S.C. § 1404(a) and therefore transfer is inappropriate. "A section 1404(a) transfer will be granted only if the moving party establishes: (1) that venue is proper in the transferor district; (2) that venue and jurisdiction are proper in the transferee district; and (3) that the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice." *FUL Inc. v. Unified School Dist. No. 204*, 839 F.Supp. 1307, 1310 (N.D.Ill. 1993). "The movant must establish that 'the transferee forum is clearly more convenient' than the transferor forum". *Id.*

In this case, the first and the second factors have not been satisfied because venue is not proper in either the United States District Court for the Northern District of Illinois or the federal courts in California. LimitNone maintains that this Court lacks subject matter jurisdiction and has brought the issue before the Court via its Motion for Leave to File Motion to Remand [Docket Nos. 12, 26] and Motion for Reconsideration of August 4, 2008 Minute Order [Docket No. 30]. Until such time as LimitNone's arguments regarding remand and the impropriety of the removal are addressed, Google cannot establish that the first two requirements of a transfer under § 1404(a) have been met. Therefore, transfer would be inappropriate.

The third factor is also lacking in Google's request to transfer venue. Contrary to Google's assertions, the plaintiff's choice of forum is given weight by the court. *See FUL*, 839 F.Supp. at 1311. In this action, LimitNone's choice of forum is the state courts of Illinois, and Illinois is the forum with the most contacts and convenience for the parties and the witnesses involved. Consequently, Google "bears a heavy burden to show that the inconvenience to the

parties and witnesses and the dictates of justice are substantial enough to overcome the presumption in favor of Illinois courts." *Id*. (citations omitted).

In addition, "[t]he presence of a valid forum selection clause prevents a defendant from asserting its own inconvenience as a reason supporting its motion to transfer." *Id*. (citations omitted). In analyzing the convenience of the parties and the witnesses, the court will focus on "the relative ease of access to sources of proof; availability of compulsory process for attendance of willing witnesses; possibility of view of premises if such would be appropriate; and all the practical problems that make trial of a case easy, expeditions [sic], and inexpensive." *Miglin v. Mellon*, No. 07-C-6863, 2008 WL 2787474, at *3 (N.D.Ill. July, 17, 2008) (citations omitted).

Analysis of each these considerations reveals that Google has failed to carry its burden with regard to the third factor required to transfer an action under § 1404. As addressed above, if any forum selection clause is applicable to this action, Google has consented to the forum selection clause in the LimitNone License Agreement, which provides for jurisdiction in the courts of Lake County, Illinois or in the United States District Court in the Northern District of Illinois and thus Google may not assert its own inconvenience as a reason. Moreover, many of the witnesses and sources of proof are located in Illinois. In fact, Google has significant operations in Illinois and most of the interactions between Google and LimitNone occurred at least in part in Illinois with LimitNone's two principles, both Illinois residents. Google has not demonstrated that it would be seriously inconvenienced by suit in Illinois. Accordingly, with none of the factors of § 1404 present, an order transferring this action would be inappropriate.

## V.    **CONCLUSION**

While LimitNone vehemently disputes that any agreement between the parties mandates that the Complaint must be heard in any jurisdiction or venue other than its chosen jurisdiction

and venue – the Circuit Court of Cook County, Illinois – if the Court finds that any of the parties' agreements controls the venue and jurisdiction for this action, the Court should find that the LimitNone License Agreement is the controlling agreement. Google has failed to meet its burden of establishing that the NDA or the GEP Agreement apply to the scope of the Complaint and or have any continuing legal effect given that they have both been clearly and entirely superseded. Accordingly, Google's Motion to Dismiss and, in the alternative, Motion to Transfer based on improper venue must be denied.

Dated: August 19, 2008

/s/ Caroline C. Plater
One of the Attorneys for Plaintiff,
LIMITNONE, LLC

David A. Rammelt (#6203754)
Caroline C. Plater (#6256076)
Matthew C. Luzadder (#6283424)
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 857-7070

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby deposes and states that she caused the foregoing *Notice of Filing* and *Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss,* to be electronically filed with the Clerk of the Court on August 19, 2008, using the ECF system, and served on all parties via the ECF system, pursuant to LR 5.9, as to Filing Users and in accord with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ Caroline C. Plater_____
Caroline C. Plater

# Exhibit A

**gMOVE**

# License Agreement

**LIMITNONE**

Please take a moment to read the license agreement now. If you accept the terms below, click "I Agree", then "Next". Otherwise click "Cancel".

---

**LIMITNONE Inc. END USER LICENSE AGREEMENT AND WARRANTY DISCLAIMER**
gMOVE

NOTICE:  This is a legally binding contract between you, the end user, and LIMITNONE Inc..

LIMITNONE Inc. ("LimitNone" or "LICENSOR") LICENSES THE ENCLOSED SOFTWARE TO YOU ("USER" or "LICENSEE")

---

◉ I Do Not Agree            ○ I Agree

[ Cancel ]    [ < Back ]    [ Next > ]

LIMITNONE Inc. END USER LICENSE AGREEMENT AND WARRANTY DISCLAIMER
gMOVE

NOTICE: This is a legally binding contract between you, the end user, and LIMITNONE Inc..

LIMITNONE Inc. ("LimitNone" or "LICENSOR") LICENSES THE ENCLOSED SOFTWARE
TO YOU ("USER" or "LICENSEE") ONLY UPON THE CONDITION THAT YOU ACCEPT
ALL OF THE TERMS CONTAINED IN THIS LICENSE AGREEMENT. PLEASE READ
THE TERMS CAREFULLY. BY OPENING THIS PACKAGE, BREAKING THE SEAL,
CLICKING ON THE "AGREE" OR "YES" BUTTON OR OTHERWISE INDICATING
ASSENT ELECTRONICALLY, OR LOADING THE SOFTWARE, YOU AGREE TO THE
TERMS AND CONDITIONS OF THIS AGREEMENT. IF YOU DO NOT AGREE TO
THESE TERMS AND CONDITIONS, CLICK ON THE "I DO NOT AGREE", "NO"
BUTTON, OR MAKE NO FURTHER USE OF THE SOFTWARE. IF YOU DO NOT AGREE
TO THESE TERMS, THEN LIMITNONE IS UN-WILLING TO LICENSE THE SOFTWARE
TO YOU, IN WHICH EVENT YOU SHOULD RETURN THE FULL PURCHASED
PRODUCT WITH PROOF OF PURCHASE TO LICENSOR OR THE DEALER FROM
WHOM IT WAS ACQUIRED WITHIN 15 DAYS OF PURCHASE, AND YOUR MONEY
WILL BE REFUNDED.

LICENSE AND WARRANTY:
The software that accompanies this license, including the clip art and images (collectively, the
"Software") is the property of LimitNone or its licensors, and is protected by copyright and other
intellectual property law. Although LimitNone at all times owns the Software, you will have
certain rights to use the Software after your acceptance of this license. Except as may be
modified by an addendum which may accompany or be added to this license, Your rights and
obligations with respect to the use of this Software are as follows:

You may:
(i) use one copy of the specified edition of Software and documentation on a single computer,
and only by one user for one email address. If you have purchased multiple licenses for the
Software, as indicated as "Quantity" or "Number of Licenses" on the invoice, Quotation or
electronic confirmation issued by LimitNone or its Resellers, then at any time you may have as
many copies of the Software in use as you have licenses. The Software is "in use" on a computer
when it is loaded into the temporary memory (i.e. RAM) or installed into the permanent memory
(e.g. hard disk, CD-ROM, or other storage device) of that computer;
(ii) use the Software on a network, provided that Licensee has a licensed copy of the Software
for each computer that can access the Software over that network;
(iii) make one copy of the Software for archival purposes, or copy the Software onto the hard
disk of Your computer and retain the original for archival purposes;
(iv) after written notice to LimitNone, transfer the Software on a permanent basis to another
person or entity, provided that you retain no copies of the Software and the transferee agrees to
the terms of this agreement;

You may not:
(i) rent, lease, copy, distribute, license, or otherwise transfer the Software or its documentation to

any other party. Licensee may make a reasonable number of back-up copies for archival purposes only. The Software contains copyrighted material, trade secrets and other proprietary material. If Licensee has the right to duplicate the Software for multiple Users, then Licensee must reproduce on all such copies of the Software the copyright notices and any other proprietary legends that were on the original copy of the Software; or
(ii) decompile, reverse engineer, disassemble, translate, make any attempt to discover the source code of the Software or otherwise reduce the Software to a human perceivable form, or modify, network, or create derivative works based upon the Software or the documentation in whole or in part, nor permit any other party to do so.

Notwithstanding anything herein, if the Software is lawfully acquired outside of the United States within a jurisdiction which is a member of the European Union subject to the EEC Council Directive 91/250/EEC of May 14, 1991, Licensee agrees that within that jurisdiction it shall not, and shall not allow any party on Licensee's behalf to, attempt to reverse engineer or decompile the Software into another computer language, except as expressly and specifically provided in the EEC Council Directive 91/250/EEC of May 14, 1991. Any and all information obtained during such lawful reverse engineering and/or decompiling activities, including but not limited to, the organization, logic, algorithms and processes of the Software, shall be deemed to be the confidential and proprietary information of LimitNone or its Licensors. Licensee shall not make copies of the copyrighted Software documentation without the prior written permission of LimitNone provided that for electronic transactions. Licensee may make one (1) hard copy of such documentation for each User.

Intellectual Property and Duplication of Software:
The Software contains copyrighted material, trade secrets and other proprietary material. If Licensee has the right to duplicate the Software for multiple Users, then Licensee must reproduce on all such copies of the Software the copyright notices and any other proprietary legends that were on the original copy of the Software.

Technical Support:
Licensee must register the Software in order to be eligible for free technical support (limited to installation and registration of the product) during the first 30 days after purchase. Use of technical support services is governed by the terms and conditions outlined in the Support Packages Agreement.

Export Law Assurances:
You are responsible for complying with all trade regulations and laws both foreign and domestic. You acknowledge that none of the Software or underlying information or technology may be downloaded or otherwise exported or re-exported (i) into Afghanistan (Taliban-controlled areas), Cuba, Iran, Iraq, Libya, North Korea, Serbia (except Kosovo), Sudan and Syria or any other country subject to a U.S. embargo; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Denied Parties List or Entity List. By using the Software you are agreeing to the foregoing and are representing and warranting that (i) no U.S. federal agency has suspended, revoked, or denied you export privileges, (ii) you are not located in or under the control of a national or resident of any such country or on any such list, and (iii) you will not export or re-export the Software to

any prohibited county, or to any prohibited person, entity, or end-user as specified by U.S. export controls as defined by EAR, 15 C.F.R. Parts 730-774, and BXA (http://www.bxa.doc.gov).

Data Collection and Privacy Policy:
You acknowledge and agree that LimitNone may collect and retain information about you, such as your name, address, and e-mail address. You also understand that LimitNone may employ other companies to perform functions on our behalf, such as fulfilling orders, delivering packages, sending postal mail and e-mail, providing marketing assistance, and processing credit card payments. These companies may have access to personal information needed to perform their functions, and may not use such information for other purposes. By assenting to this agreement, you agree that you have read and understand our Privacy Policy.  For more detailed information, http://www.mindjet.com/us/privacy.php.

Termination:
This License is effective until terminated. Licensee may terminate this License at any time by destroying all copies of the Software and its documentation. This License will terminate immediately without notice from LimitNone if Licensee fails to comply with any provision of this License. Upon termination, Licensee must destroy all copies of the Software and its documentation and cease and desist from any further use of the Software.

Limited Warranty:
LimitNone warrants that the media on which the Software is distributed will be free from defects, and that the Software shall perform substantially as described in its documentation for a period of sixty (60) days from purchase. Your sole remedy in the event of a breach of this warranty will be that LimitNone will replace any defective media returned to LimitNone within the warranty period.  LimitNone does not warrant that the Software will meet your requirements or that operation of the Software will be uninterrupted or that the Software will be error-free.

THE ABOVE WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS.  YOU MAY HAVE OTHER RIGHTS, WHICH VARY FROM STATE TO STATE AND COUNTRY TO COUNTRY.

Disclaimer of Damages:
REGARDLESS OF WHETHER ANY REMEDY SET FORTH HEREIN FAILS OF ITS ESSENTIAL PURPOSE, IN NO EVENT WILL LIMITNONE, ITS RESELLERS OR ITS LICENSORS BE LIABLE TO YOU FOR ANY SPECIAL, CONSEQUENTIAL, INDIRECT OR SIMILAR DAMAGES, INCLUDING ANY LOST PROFITS OR LOST DATA ARISING OUT OF THE USE OR INABILITY TO USE THE SOFTWARE EVEN IF LIMITNONE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. SOME STATES DO NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.  IN NO CASE SHALL LIMITNONE'S, IT'S RESELLER'S OR ITS LICENSOR'S LIABILITY EXCEED THE PURCHASE PRICE FOR THE SOFTWARE.

SOME STATES AND COUNTRIES, INCLUDING MEMBER COUNTRIES OF THE EUROPEAN ECONOMIC AREA, DO NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.

The disclaimers and limitations set forth above will apply regardless of whether You accept the Software.

U.S. Government Restricted Rights:
DISTRIBUTION TO THE U.S. GOVERNMENT. This Software is commercial software developed exclusively at private expense. This Software and the documentation are provided with "RESTRICTED RIGHTS" applicable to private and public licenses alike. Use, duplication, or disclosure by civilian agencies of the U.S. Government shall be in accordance with the Commercial Computer Software-Restricted Rights clause at FAR 52.227-19. Use, duplication, or disclosure by Department of Defense agencies is subject solely to the terms of this software licensing agreement pursuant to DFARS 227.7202. Contractor/manufacturer of the Software is LimitNone Inc., 125 E. Sir Francis Drake Blvd., 4th Floor, Larkspur, Illinois, USA 94939.

General:
This Agreement shall be governed by the laws of the State of Illinois, without giving effect to principles of conflict of laws. You hereby consent to the exclusive jurisdiction and venue of the state courts sitting in Lake County, Illinois or the federal courts in the Northern District of Illinois to resolve any disputes arising under this Agreement. This Agreement contains the complete understanding between the parties with respect to the subject matter hereof, and supersedes all prior or contemporaneous Agreements or understandings, whether oral or written. You agree that any varying or additional terms contained in any purchase order or other written notification or document issued by you in relation to the Software licensed hereunder shall be of no effect. No provision hereof shall be deemed waived or modified except in writing. No LimitNone dealer, agent or employee is authorized to make any amendment to this Agreement.

The intellectual property protections, the disclaimers of warranties, and the limitation of damages shall survive termination. The failure or delay of LimitNone to exercise any of its rights under this Agreement or upon any breach of this Agreement shall not be deemed a waiver of those rights or of the breach. If any provision of this Agreement is held invalid, the remainder of this Agreement will remain in full force and effect.

Should you have any questions concerning this Agreement, or if you desire to contact LimitNone for any reason, please write to: LimitNone Inc., 2033 Milwaukee Ave. Suite 225, Riverwoods, IL 60015.

**Exhibit B**

# Google **Mutual Non-Disclosure Agreement**

V032404C.1

This Mutual Non-Disclosure Agreement ("Agreement") is made and entered into between Google Inc., for itself and its subsidiaries and affiliates ("Google"), and "Participant" identified below, individually referred to as a "Party" and collectively referred to as the "Parties". The Parties wish to exchange Confidential Information (as defined below in Section 2) for the following purpose(s): a) to evaluate whether to enter into a contemplated business transaction; and b) if the Parties enter into an agreement related to such business transaction, to fulfill each Party's confidentiality obligations to the extent the terms set forth below are incorporated therein (the "Purpose"). The Parties have entered into this Agreement to protect the confidentiality of information in accordance with the following terms:

**1.** The Effective Date of this Agreement is 02/27/2007 .

**2.** In connection with the Purpose, a Party may disclose certain information it considers confidential and/or proprietary ("Confidential Information") to the other Party including, but not limited to, tangible, intangible, visual, electronic, present, or future information such as: (a) trade secrets; (b) financial information, including pricing; (c) technical information, including research, development, procedures, algorithms, data, designs, and know-how; (d) business information, including operations, planning, marketing interests, and products; (e) the terms of any agreement entered into between the Parties and the discussions, negotiations and proposals related thereto; and (f) information acquired during any facilities tours.

**3.** The Party receiving Confidential Information (a "Recipient") will only have a duty to protect Confidential Information disclosed to it by the other Party ("Discloser"): (a) if it is clearly and conspicuously marked as "confidential" or with a similar designation; (b) if it is identified by the Discloser as confidential and/or proprietary before, during, or promptly after presentation or communication; or (c) if it is disclosed in a manner in which the Discloser reasonably communicated, or the Recipient should reasonably have understood under the circumstances, including without limitation those described in Section 2 above, that the disclosure should be treated as confidential, whether or not the specific designation "confidential" or any similar designation is used.

**4.** A Recipient will use the Confidential Information only for the Purpose described above. A Recipient will use the same degree of care, but no less than a reasonable degree of care, as the Recipient uses with respect to its own information of a similar nature to protect the Confidential Information and to prevent: (a) any use of Confidential Information in violation of this Agreement; and/or (b) communication of Confidential Information to any unauthorized third parties. Confidential Information may only be disseminated to employees, directors, agents or third party contractors of Recipient with a need to know and who have first signed an agreement with either of the Parties containing confidentiality provisions substantially similar to those set forth herein.

**5.** Each Party agrees that it shall not do the following, except with the advanced review and written approval of the other Party: (a) issue or release any articles, advertising, publicity or other matter relating to this Agreement (including the fact that a meeting or discussion has taken place between the Parties) or mentioning or implying the name of the other Party; or (b) make copies of documents containing Confidential Information.

**6.** This Agreement imposes no obligation upon a Recipient with respect to Confidential Information that: (a) was known to the Recipient before receipt from the Discloser; (b) is or becomes publicly available through no fault of the Recipient; (c) is rightfully received by the Recipient from a third party without a duty of confidentiality; (d) is independently developed by the Recipient without a breach of this Agreement; (e) is disclosed by the Recipient with the Discloser's prior written approval; or (f) is required to be disclosed by operation of law, court order or other governmental demand ("Process"); provided that (i) the Recipient shall immediately notify the Discloser of such Process; and (ii) the Recipient shall not produce or disclose Confidential Information in response to the Process unless the Discloser has: (a) requested protection from the legal or governmental authority requiring the Process and such request has been denied, (b) consented in writing to the production or disclosure of the Confidential Information in response to the Process, or (c) taken no action to protect its interest in the Confidential Information within 14 business days after receipt of notice from the Recipient of its obligation to produce or disclose Confidential Information in response to the Process.

**7.** EACH DISCLOSER WARRANTS THAT IT HAS THE RIGHT TO DISCLOSE ITS CONFIDENTIAL INFORMATION. NO OTHER WARRANTIES ARE MADE. ALL CONFIDENTIAL INFORMATION DISCLOSED HEREUNDER IS PROVIDED "AS IS".

**8.** This Agreement shall remain in effect until it is terminated by either Party with thirty (30) days prior written notice. Notwithstanding the foregoing, this Agreement shall survive with respect to Confidential Information that is disclosed before the effective date of termination.

**9.** Unless the Parties otherwise agree in writing, a Recipient's duty to protect Confidential Information expires five (5) years from the date of disclosure. A Recipient, upon Discloser's written request, will promptly return all Confidential Information received from the Discloser, together with all copies, or certify in writing that all such Confidential Information and copies thereof have been destroyed. Regardless of whether the Confidential Information is returned or destroyed, the Recipient may retain an archival copy of the Discloser's Confidential Information in the possession of outside counsel of its own choosing for use solely in the event a dispute arises hereunder and only in connection with such dispute.

**10.** This Agreement imposes no obligation on a Party to exchange Confidential Information, proceed with any business opportunity, or purchase, sell, license, transfer or otherwise make use of any technology, services or products.

**11.** No Party acquires any intellectual property rights under this Agreement (including, but not limited to, patent, copyright, and trademark rights) except the limited rights necessary to carry out the Purpose as set forth in this Agreement.

**12.** Each Party acknowledges that damages for improper disclosure of Confidential Information may be irreparable; therefore, the injured Party is entitled to seek equitable relief, including injunction and preliminary injunction, in addition to all other remedies available to it.

**13.** This Agreement does not create any agency or partnership relationship. This Agreement will not be assignable or transferable by Participant without the prior written consent of Google.

**14.** This Agreement may be executed in two or more identical counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute the agreement when a duly authorized representative of each party has signed the counterpart.

**15.** This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior oral or written agreements, and all contemporaneous oral communications. All additions or modifications to this Agreement must be made in writing and must be signed by the Parties. Any failure to enforce a provision of this Agreement shall not constitute a waiver thereof or of any other provision.

**16.** This Agreement shall be governed by the laws of the State of California, without reference to conflict of laws principles. The exclusive venue for any dispute relating to this Agreement shall be in the state or federal courts within Santa Clara County, California.

---

| Google Inc. | | Participant: | LimitNone LLC |
|---|---|---|---|
| By: | | By: | _(signature)_ |
| Name: | | Name: | Raymond J Glassmann |
| Title: | | Title: | President |
| Address: | 1600 Amphitheatre Parkway, Mountain View, CA 94043 | Address: | 1059 S. Windhill Drive, Palatine, IL 60067 |
| Date: | ___/___/___ | Date: | ___/___/___ |

(Rev. 032404)

# Exhibit C

**Thank you for your interest in LimitNone gMOVE.**

- To view a slideshow, click here
- To view documentation, click here
- For support,contactsupport@limitnone.com

---

**Please note the following conditions for becoming part of the Beta program:**

1. You are granted a a non-exclusive, non-transferable license to use the Software on a single computer for Beta Testing purposes.

2. In consideration for receiving a copy of the Software for testing, you agree to serve as a "Beta Tester" for the Software and will notify LimitNone, Inc. of all problems and ideas for enhancements which come to your attention during the period of this Beta Test period.

3. You assign to LimitNone, Inc. all right, title and interest to such enhancements and all property rights therein including without limitation all patent, copyright, trade secret, mask work, trademark, moral right or other intellectual property rights.

4. You agree that the Software is the sole property of LimitNone, Inc.

5. You understand that the Software is prerelease code and is not at the level of performance and compatibility of a final, generally available product offering. Software may not operate correctly and may be substantially modified prior to first commercial shipment, or withdrawn. Software is provide "AS IS" without warranty of any kind. The entire risk arising out of the use or performance of Software remains with you. In no event shall LimitNone, Inc. be liable for any damage whatsoever arising out of the use of or inability to use Software, even if LimitNone, Inc.has been advised of the possibility of such damages.

5. This License Agreement shall be governed, construed and enforced in accordance with the laws of the United States of America and of the State of Illinois. Any notice required by this Agreement shall be given by prepaid, first class, certified mail, return receipt requested, addressed to:

> LimitNone, Inc.
> 2033 Milwaukee Ave., Suite 225
> Riverwoods, IL 60015

or such other address as may be given from time to time under the terms of this notice provision.

6. This Agreement constitutes the entire and only agreement between the parties for Software and all other prior negotiations, representations, agreements, and understandings are superseded hereby. No agreements altering or supplementing the terms hereof may be made except by means of a written document signed by the duly authorized representatives of the parties.

7. Licensee shall comply with all applicable federal, state and local laws, regulations, and ordinances in connection with its activities pursuant to this Agreement.

8. Failure of LimitNone, Inc. to enforce a right under this Agreement shall not act as a waiver of that right or the ability to later assert that right relative to the particular situation involved.

9. If any provision of this Agreement shall be found by a court to be void, invalid or unenforceable, the same shall be reformed to comply with applicable law or stricken if not so conformable, so as not to affect the validity or enforceability of this Agreement.

---

**To download the product, please click here.**

You will be asked to enter a license number.  **Your unique license number is:**