IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIMITNONE LLC, | ) | |
| | ) | Case No. 08-cv-04178 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Hon. Blanche M. Manning |
| | ) | |
| GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR IMPROPER VENUE UNDER F.R.C.P. 12(b)(3), OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT..........................................................................................................2

I.     THE EULA'S FORUM SELECTION CLAUSE DOES NOT GOVERN HERE. .............2

     A.     LimitNone is Not Seeking to Enforce the EULA, and Admits That It Does Not Dictate the Forum for This Dispute. .................................................................2

     B.     The EULA Is Not a Writing Signed By Both Parties, and Thus Did Not Modify the California Forum Selection Clauses in the NDA and GEP Agreement...................................................................................................3

II.     THIS ACTION IS WITHIN THE SCOPE OF THE GEP AGREEMENT. ........................4

III.     THE GEP AGREEMENT'S FORUM SELECTION CLAUSE IS MANDATORY AND ENFORCEABLE AGAINST LIMITNONE. ........................................................8

IV.     THE NDA IS ENFORCEABLE AGAINST LIMITNONE. ..............................................9

V.     LIMITNONE HAS NOT DEMONSTRATED FRAUD, DEPRIVATION OF ITS DAY IN COURT, OR CONTRAVENTION OF A STRONG PUBLIC POLICY—AS IT MUST TO AVOID ENFORCEMENT OF THE TWO FORUM SELECTION CLAUSES TO WHICH IT AGREED. .......................................................11

VI.     DISMISSAL OR TRANSFER IS APPROPRIATE UNDER SECTION 1404(A)...........12

CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

**Page**

## Cases

*AGA Shareholders, LLC v. CSK Auto, Inc.*,
467 F. Supp. 2d 834 (N.D. Ill. 2006) ......................................................................12

*Adventus Americas Inc. v. Innovative Environmental Technologies*,
2007 WL 704938 (N.D. Ill., March 5, 2007) ...........................................................12

*American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*,
364 F.3d 884 (7th Cir. 2004) ....................................................................................7

*Budget Rent A Car Corp. v. Crescent Ace Hardware*,
2003 WL 21673932 (N.D. Ill. July 16, 2003) ...........................................................8

*Calanca v. D & S Mfg. Co.*,
510 N.E.2d 21 (Ill. App. 1 Dist. 1987) ....................................................................11

*Clinton v. Janger*,
583 F. Supp. 284 (N.D. Ill. 1984) ............................................................................11

*Cooper v. Carl A. Nelson & Co.*,
211 F.3d 1008 (7th Cir. 2000) ..................................................................................6

*Courtois v. Millard*,
174 Ill. App. 3d 716 (Ill. App. 5 Dist. 1988) .............................................................4

*Diversified Technologies Corp. v. Jerome Technologies, Inc.*,
118 F.R.D. 445 (N.D. Ill. 1988) ...............................................................................10

*Dolezal v. Plastic and Reconstructive Surgery*,
266 Ill. App. 3d 1070 (Ill. App. 1 Dist. 1994) ..........................................................4

*Dye v. Wargo*,
253 F.3d 296 (7th Cir. 2001) ..............................................................................9, 10

*Fairbanks Capital Corp. v. Jenkins*,
225 F. Supp. 2d 910 (N.D. Ill. 2002) ........................................................................6

*Foster Wheeler Energy Corp. v. LSP Equipment, LLC*,
805 N.E.2d 688 (Ill. App. 2 Dist. 2004) ....................................................................8

*Frangiapani v. Boeker*,
64 Cal. App. 4th 860 (1998) ......................................................................................4

*Heller Financial, Inc. v. Midwhey Powder Co., Inc.*,
883 F.2d 1286 (7th Cir. 1989) ...........................................................3, 8, 11, 12, 13, 14

*Hubble v. O'Connor*,
684 N.E.2d 816 (Ill. App. 1 Dist. 1997) ....................................................................9

*Hugel v. Corp. of Lloyd's,*
   999 F.2d 206 (7th Cir. 1993) ..........................................................................7

*Intec USA, LLC v. Engle,*
   467 F.3d 1038 (7th Cir. 2006) ......................................................................13

*Kochert v. Adagen Medical Intern., Inc.,*
   491 F.3d 674 (7th Cir. 2007) ........................................................................7

*In re Liquidation of Inter-American Ins. Co. of Illinois,*
   303 Ill. App. 3d 95 (Ill.App. 1 Dist. 1999) ..................................................4

*MCI WorldCom Network Services, Inc. v. Atlas Excavating, Inc.,*
   2006 WL 3542332 (N.D. Ill., Dec. 6, 2006)................................................13

*Miglin v. Mellon,*
   2008 WL 2787474 (N.D. Ill. July 17, 2008)..................................................7

*Muzumdar v. Wellness Intern. Network, Ltd.,*
   438 F.3d 759 (7th Cir. 2006) ........................................................................9

*Morgan Laboratories Inc. v. Micro Data Base Systems, Inc.,*
   1997 WL 258886 (N.D. Cal. Jan. 22, 1997) ................................................3

*Nissan Forklift Corp. v. Zenith Fuel Systems, L.L.C.,*
   2006 WL 643937 (N.D. Ill. March 3, 2006)................................................10

*Olinick v. BMG Entertainment,*
   138 Cal. App. 4th 1286 (Cal. App. 2 Dist. 2006) ........................................8

*Organ v. Byron, ,*
   434 F. Supp. 2d 539 (N.D. Ill. 2005) ..........................................................7

*Paper Express, Ltd. v. Pfankuch Maschinen GmbH,*
   972 F.2d 753 (7th Cir. 1992) ..................................................................11, 12

*Photogen, Inc. v. Wolf,*
   2001 WL 477226 (N.D. Ill. May 7, 2001)................................................8, 10

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.,*
   127 S. Ct. 1184 (2007)................................................................................13

*Stewart Organization, Inc. v. Ricoh Corp.,*
   487 U.S. 22 (1988)......................................................................................11

*Taylor v. Monsanto Co.,*
   150 F.3d 806 (7th Cir. 1998) ........................................................................6

*The Bremen v. Zapata Off-Shore Co.,*
   407 U.S. 1 (1972)) (enforcing forum selection clause requiring litigation in Germany..........11

*United Equitable Life Ins. Co. v. Trans Global Corp.,*
   679 F. Supp. 769 (N.D. Ill. 1988) ................................................................3

*Wonderlic Agency, Inc. v. Acceleration Corp.*,
  624 F. Supp. 801 (N.D. Ill. 1985) ........................................................................10

## **Statutes**

28 U.S.C. § 1391(b)(1) ...........................................................................................12

28 U.S.C. § 1404(a) .................................................................................................2

Fed. R. Civ. P. 12(b)(3)............................................................................................2

## **Other**

Restatement (Second) of Contracts § 135 (1981) .......................................................9

## PRELIMINARY STATEMENT

LimitNone asserts four arguments in opposition to Google's Motion to Dismiss.  None of them is meritorious.  First, LimitNone claims that to the extent any contractual forum selection clause governs this action (which LimitNone disputes), it would be the Illinois forum selection clause found in LimitNone's End User License Agreement ("EULA") in its gMove software.  According to LimitNone, the EULA supersedes the Google Enterprise Professional ("GEP") Agreement and Non-Disclosure Agreement ("NDA").  Even assuming the EULA constitutes a binding agreement between the parties, however, it does not and cannot supersede the forum selection clauses in the GEP Agreement and NDA, since those agreements specifically provide that they may be modified only in a writing signed by both parties.  It is undisputed that the EULA is not a writing signed by both parties.

Second, LimitNone contends that the scope of the GEP Agreement does not encompass this action.  LimitNone is incorrect.  LimitNone's own Complaint alleges that its dispute arose out of its role as a Google Enterprise Professional—the very business relationship memorialized by the GEP Agreement.

Third, LimitNone argues that the NDA is unenforceable because only LimitNone signed it and, further, that the GEP Agreement is unenforceable because its forum selection clause is permissive rather than mandatory.  Neither argument succeeds.  Case law confirms that the NDA is enforceable against the party who did sign it—here, LimitNone.  As for the GEP Agreement, LimitNone ignores the forum selection clause's clear language providing for "exclusive jurisdiction" in Santa Clara County, California—a term that courts universally hold is mandatory in the context of forum selection clauses.

Fourth, LimitNone claims that transfer is inappropriate because the section 1404(a) factors have not been met.  Again, LimitNone's own Complaint demonstrates otherwise.  LimitNone has alleged that (1) venue is appropriate in the county in which this Court sits, (2) Google's principal place of business is in the county in which the transferee court sits, and (3) most if not all of the relevant events underlying this action occurred in California, relevant

witnesses are located in California, and LimitNone traveled to California to initiate the very relationship with Google that resulted in this action.  The section 1404(a) factors have been met.

LimitNone fails to refute Google's clear showing that the two mandatory forum selection clauses governing this dispute require dismissal of this action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, at the very least, that this action should be transferred to the Northern District of California under 28 U.S.C. section 1404(a).

## ARGUMENT

## I.    THE EULA'S FORUM SELECTION CLAUSE DOES NOT GOVERN HERE.

LimitNone argues that if any forum selection clause governs this dispute, it is the Illinois forum selection clause found in the EULA embedded in its gMove software.  LimitNone is incorrect for two, independent reasons.

### A.    LimitNone is Not Seeking to Enforce the EULA, and Admits That It Does Not Dictate the Forum for This Dispute.

First, LimitNone's entire argument is a non-starter, because LimitNone itself insists that it "does not believe that venue in this matter is dictated by any forum selection clause." LimitNone's Opposition to Google's Motion to Dismiss ("Opp.") at 1, n. 1.  LimitNone may not argue for the "hypothetical" application of the EULA.[1]  LimitNone must take a position here—it must either assert that the EULA applies and seek to enforce its terms against Google (supported by competent evidence), or not.  Since LimitNone "vehemently disputes that any agreement

---

[1] LimitNone's motivation for arguing the "hypothetical" application of the EULA's forum selection clause is obvious—LimitNone cannot argue that its EULA governs here without conceding that its unfair competition claim is preempted by the Copyright Act, and that its planned Motion to Remand is frivolous.  The EULA states that "the software that accompanies this license [i.e. gMove] . . . is protected by copyright," "[t]he software contains copyrighted material," and that for any licensed duplication of gMove, the duplicator "must reproduce on all such copies of the Software the copyright notices."  *See* EULA (Docket No. 36-2, Ex. A).

2

between the parties mandates that the Complaint must be heard in any jurisdiction or forum," the EULA's forum selection clause is irrelevant here by LimitNone's own account.[2]  *See* Opp. at 19.

**B.**    **The EULA Is Not a Writing Signed By Both Parties, and Thus Did Not Modify the California Forum Selection Clauses in the NDA and GEP Agreement.**

Even assuming the EULA does constitute a binding agreement between the parties,[3] it did not supersede the forum selection provisions of the NDA or the GEP Agreement, as LimitNone has argued.  Both agreements state that they may be modified only in writing signed by *both* parties.  *See* NDA, ¶ 15 ("All additions or modifications to this Agreement must be made in writing and must be signed by the Parties") (Docket No. 18-2, Ex. A); GEP Agreement, ¶ 9 ("This Agreement may be modified only in writing signed by both parties") (Docket No. 18-2, Ex. B).  It is undisputed that the EULA is not a writing signed by both parties.  *See* EULA (Docket No. 36-2, Ex. A).

As such, the EULA's forum selection clause did not modify the NDA's and GEP Agreement's forum selection clauses designating Santa Clara County, California as the forum for all disputes relating to the parties' exchange of confidential information and LimitNone's participation in the Google Enterprise Professional program.  *See United Equitable Life Ins. Co. v. Trans Global Corp.*, 679 F.Supp. 769, 775 (N.D. Ill. 1988) (upholding contract clause that permits no modifications except in a writing signed by both parties over a promissory note that contradicted the terms of the contract and that was signed solely by defendants).  Indeed, in this very circumstance courts have found that click-wrap licenses "do not trump explicit prior

---

[2] LimitNone concedes that the "Beta License Agreement" also referenced in its Opposition has no forum selection clause and thus is irrelevant to Google's motion.  *See* Opp. at 4-5.

[3] LimitNone claims that Google is bound by the EULA because Google allegedly clicked its assent to the EULA a number of times (*see* Opp. at 5, fn.7), but provides not a shred of evidence supporting its assertions, which therefore are not properly before this Court.  *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (rejecting assertions of party seeking to avoid enforcement of forum selection clause who had "supplied nothing in the way of affidavits, depositions, stipulations, or any other type of document").

agreements where those agreements contain integration clauses and 'no-modification-unless-in-writing' clauses." *See, e.g.*, *Morgan Laboratories Inc. v. Micro Data Base Systems, Inc.,* 1997 WL 258886 at *4 (N.D. Cal. Jan. 22, 1997).

None of LimitNone's cited authorities require a different result, because none of the contracts at issue in those cases involved or discussed a "no-modification-except-in-writing" clause, as is present here.[4]  *See Dolezal v. Plastic and Reconstructive Surgery*, 266 Ill. App. 3d 1070, 1081 (Ill. App. 1 Dist. 1994); *Courtois v. Millard*, 174 Ill. App.3d 716, 720 (Ill. App. 5 Dist. 1988); *Frangiapani v. Boeker*, 64 Cal. App. 4th 860, 863 (1998).  Accordingly, the EULA is irrelevant to the forum issue, and the NDA and GEP Agreements control.[5]

## II.    **THIS ACTION IS WITHIN THE SCOPE OF THE GEP AGREEMENT.**

LimitNone next argues that its claims do not arise out of the GEP Agreement, because the GEP Agreement does not "address the specific issues raised in the Complaint."  Opp. at 15. LimitNone again is incorrect.  The Complaint alleges in plain terms that LimitNone's dispute with Google arose out of the parties' exchange of confidential information pursuant to LimitNone's role as a Google Enterprise Professional—which is the very business relationship memorialized by GEP Agreement.

Specifically, LimitNone alleges that "Google actively encourages and solicits third-party developers to build software enhancements and applications for use with Google's existing products, include those featured in Google Apps."  Complaint, ¶ 9.  LimitNone claims that it was

---

[4]  In fact, *Courtois* significantly undermines LimitNone's supersedence argument, as the court held that a later contract supersedes an earlier one only when "the two contracts involve identical subject matter."  *Courtois*, 174 Ill. App. at 720.  Here, by contrast, LimitNone argues that the GEP Agreement and the EULA involve *different* subject matter.  *See* Opp. at 1, 8, 9.

[5]  Contrary to LimitNone's contention, the Court need not reach the issue of whether the GEP Agreement superseded the NDA, since both contracts contain the same California forum selection clause.  *See In re Liquidation of Inter-American Ins. Co. of Illinois*, 303 Ill.App.3d 95, 101 (Ill.App. 1 Dist. 1999) (declining to consider "any contract interpretation issues beyond what was necessary to determine whether the contracts were executory" in resolving a motion focused on whether the contracts were executory).  Regardless of whether the NDA and GEP Agreement govern concurrently, or whether one superseded the other, the result is the same—Google's and LimitNone's selection of Santa Clara County, California as the exclusive forum for resolution of their disputes should be enforced.

such a third-party developer, and that in early 2007 it contacted Google concerning its interest in participating in Google's Enterprise Professional program, which LimitNone claims it was subsequently invited to join. Complaint ¶¶ 18-22. According to LimitNone, "members of the Google Apps team … represented that Google would provide all necessary development assistance... to ensure that gMove would work with the Google Apps platform." Complaint, ¶27. LimitNone further alleges that during the course of that relationship, LimitNone shared with Google certain proprietary and trade secret information relating to its proposed software application for use in conjunction with Gmail (the email component of Google Apps), known as the gMove software program. Complaint, ¶¶ 22, 29, 48, 70. In particular, LimitNone claims it shared "the gMove program" itself, "sales forecasts," "conceptual design" of gMove," "technical process[es]" and "marketing materials." Complaint, ¶¶ 22, 29, 48 55, 56, 70. Finally, LimitNone claims that Google copied and misappropriated the software and other materials that it shared with Google during this relationship, to LimitNone's detriment. Complaint ¶¶ 55-56, 62-64, 74.

LimitNone's allegations bring this action squarely within the GEP Agreement. On its face, the GEP Agreement broadly covers the entire scope of LimitNone's participation the Google Enterprise Professional Program:

> 1. <u>Google Enterprise Professional ("GEP") Program</u>. **Subject to the terms of this Agreement, Company shall participate in the Google Enterprise Professional Program (the "Program") pursuant to which it will license certain Google Enterprise Products** which may include hardware, software and documentation (collectively "Products") **or subscribe to certain Google-hosted services** ("Hosted Services") and obtain technical services and training **in order to assist Company in developing its own products and services which work in conjunction with the Products and Hosted Services.** Company shall further meet the training and support requirements set forth herein and upon completion and maintenance of the certifications requirements set forth herein, Company shall be appointed a certified "Google Enterprise Professional."

*See* GEP Agreement, Preamble & ¶ 1 (Motion to Dismiss, Docket No. 18-2, Ex. B) (emphasis added).) The GEP Agreement further states:

> **In connection with performance of its obligations hereunder, a party may have access to Information that the other party considers confidential** and/or

proprietary ("Confidential Information"). … **Each party agrees to hold the other party's Confidential Information in confidence for a period of five (5) years** from the date of disclosure.

*See* GEP Agreement ¶ 6 (Motion to Dismiss, Docket No. 18-2, Ex. B) (emphasis added).)

As LimitNone's own Complaint makes clear, it was pursuant to LimitNone's participation in the Google Enterprise Professional Program that LimitNone allegedly disclosed to Google its software and other confidential information that is the subject of this suit. *See* Complaint, ¶¶ 18-22, 29, 48 55, 56. The GEP Agreement confirms that LimitNone's participation in the Google Enterprise Professional Program was entirely "subject to the terms of" the GEP Agreement. *See* GEP Agreement, ¶ 1 (Motion to Dismiss, Docket No. 18-2, Ex. B).[6] LimitNone may not ignore its own allegations, which plead a dispute arising from its role as a Google Enterprise Professional. *See Fairbanks Capital Corp. v. Jenkins*, 225 F.Supp.2d 910, 914 (N.D. Ill. 2002) (citing *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1014 (7th Cir. 2000) and *Taylor v. Monsanto Co.*, 150 F.3d 806, 809 (7th Cir. 1998) (finding unavailing a party's arguments that contradicted the allegations it had made in its complaint). Thus, LimitNone may not escape the reach of the GEP Agreement's California forum selection clause, to which LimitNone agreed when it voluntarily reached out to Google to join the GEP Program.[7]

---

[6] LimitNone's suggestion that the GEP Agreement "could have applied to any number of projects being considered by LimitNone and Google" is exactly right—the GEP Agreement does indeed cover any and all projects LimitNone engaged in pursuant to its role as a Google Enterprise Professional, including the development of gMove for use in conjunction with Google's Gmail application. *See* Opp. at 16.

[7] LimitNone does *not* similarly contest Google's demonstration that the scope of the NDA covers this dispute. *See* Opp. at 14-16. Nor could it, without contradicting its own Complaint. LimitNone alleges that during the course of its relationship with Google, LimitNone shared with Google certain proprietary and trade secret information relating to the gMove software program, including "the gMove program," "sales forecasts," "conceptual design" of gMove," "technical process[es]" and "marketing materials." Complaint, ¶¶ 22, 29, 48 55, 56, 70. LimitNone also claims that Google copied and misappropriated the software and other materials, to LimitNone's detriment. Complaint ¶¶ 55-56, 62-64, 74. This alleged conduct falls squarely within the scope and terms of the NDA, which states in relevant part that it covers the exchange of confidential information between the parties—including "trade secrets," "technical information," "designs," and "products"—as the parties explored a potential business relationship. *See* NDA, Preamble and ¶ 2 (Motion to Dismiss, Docket No. 18-2, Ex. A).

6

Nor may LimitNone escape the GEP Agreement's forum selection clause by electing to plead claims other than breach of contract, as it suggests. *See* Opp. at 7. A "contract's forum selection clause is not limited to claims for breach" unless specifically so limited in the language of the contract. *See Kochert v. Adagen Medical Intern., Inc.,* 491 F.3d 674, 679 (7th Cir. 2007) (fraud claim governed by forum selection clause). *See also American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd*., 364 F.3d 884, 889 (7th Cir. 2004) ("the existence of multiple remedies for wrongs arising out of a contractual relationship . . . does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.")

Neither the GEP Agreement nor the NDA are worded so as to limit the scope of their respective forum selection clauses only to claims for breach of those agreements. *See* GEP Agreement, ¶ 9 ("This Agreement and any claim or dispute of whatever nature arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the state of California and the federal U.S. laws applicable therein, without giving effect to any choice of law principles that would require the application of the laws of a different state. [LimitNone] and Google agree to submit to the personal and exclusive jurisdiction of the courts located in Santa Clara County, California.") (Docket No. 18-2, Ex. B); NDA, ¶ 16 ("The exclusive venue for any dispute relating to this Agreement shall be in the state or federal courts located within Santa Clara County, California.") (Docket No. 18-2, Ex. A).

It is well-settled that broad language such as that included in the GEP Agreement and NDA's forum selection clauses encompasses claims beyond breach of contract. *See American Patriot Ins. Agency,* 364 F.3d at 889 (a forum selection clause that applies to claims "concerning" or "arising out of" the contract applies to claims beyond breach of contract); *Miglin v. Mellon*, 2008 WL 2787474, at *2 (N.D. Ill. July 17, 2008) (quoting *Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 209 (7th Cir. 1993) for the proposition that a forum selection clause encompassing "any dispute and/or controversy of whatsoever nature arising out of or relating to the [contract]"

was clearly broad enough to encompass claims other than breach of contract.); *Organ v. Byron,* 434 F.Supp.2d 539, 542-543 (N.D. Ill. 2005) (enforcing a forum selection clause encompassing actions "relating to" the contract, despite plaintiff's insistence "that his cause of action does not arise out of the [contract] but is a statutory, private civil action arising under Illinois securities law.")  LimitNone cannot escape the two California forum selection clauses with this argument either.

## III.    THE GEP AGREEMENT'S FORUM SELECTION CLAUSE IS MANDATORY AND ENFORCEABLE AGAINST LIMITNONE.

LimitNone next argues that the GEP Agreement's forum selection clause not enforceable because it is permissive, not mandatory.  The plain language of the clause proves otherwise.  The forum selection clause requires LimitNone to submit to the "**exclusive jurisdiction** of the courts located in Santa Clara County, California."  GEP Agreement, ¶ 9 (Motion to Dismiss, Docket No. 18-2, Ex. B) (emphasis added).  As numerous courts have held, such language creates a mandatory selection of forum.  *See, e.g.*, *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1289 (7th Cir. 1989) (finding mandatory a forum selection clause stating that the parties "submit, at [Heller's] election to the <u>exclusive jurisdiction</u> and venue of any courts [ ] federal, state, or local, having a situs within [Illinois]") (emphasis added); *Budget Rent A Car Corp. v. Crescent Ace Hardware*, 2003 WL 21673932 at *3 (N.D. Ill. July 16, 2003) (finding mandatory a forum selection clause stating that "Dealer agrees to submit to the <u>exclusive jurisdiction</u> of the federal and state courts located in, or whose jurisdiction includes, DuPage County, Illinois") (emphasis added); *Photogen, Inc. v. Wolf*, 2001 WL 477226 at *3 (N.D. Ill. May 7, 2001) (finding mandatory a forum selection clause stating "[e]ach Party submits to the <u>exclusive jurisdiction</u> of any state or federal court sitting in Chicago, Illinois") (emphasis added); *Foster Wheeler Energy Corp. v. LSP Equipment, LLC*, 805 N.E.2d 688, 690 (Ill. App. 2 Dist. 2004) (finding mandatory a forum selection clause stating "[t]he Parties hereby submit themselves to the <u>exclusive jurisdiction</u> of the state and federal courts located in the state of New York") (emphasis added); *Olinick v. BMG Entertainment*, 138 Cal.App.4th 1286, 1300 (Cal.

App. 2 Dist. 2006) (finding mandatory a forum selection clause stating "[t]he parties agree to the <u>exclusive jurisdiction</u> and venue of the Supreme Court of the State of New York for New York County and/or the United States District Court for the Southern District of New York") (emphasis added).  *Cf. Muzumdar v. Wellness Intern. Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006) (noting that the phrase "non-exclusive jurisdiction" "renders the forum selection clause permissive" because a mandatory clause would be "exclusive").

Because the forum selection clause in the GEP Agreement is mandatory, not permissive, LimitNone's contention is unavailing.[8]

## IV.    <u>THE NDA IS ENFORCEABLE AGAINST LIMITNONE.</u>

LimitNone further urges that the NDA is not enforceable against it, because the NDA does not bear Google's signature.  As Google pointed out in its moving papers, however, *LimitNone* signed the NDA, and thus is bound by its terms under basic principles of contract law. *See Dye v. Wargo*, 253 F.3d 296, 300 (7th Cir. 2001) ("the statute of frauds requires the signature only of the party sought to be bound."); *Hubble v. O'Connor*, 684 N.E.2d 816, 833 (Ill. App. 1 Dist. 1997) (signatory to agreement is bound even if not all other parties signed); RESTATEMENT (SECOND) OF CONTRACTS § 135 (1981) ("Where a memorandum of a contract within the Statute is signed by fewer than all parties to the contract and the Statute is not otherwise satisfied, the contract is enforceable against the signers….").[9]

---

[8] LimitNone also argues that the GEP Agreement has "expired," such that LimitNone is no longer bound by its agreement to litigate in California.  *See* Opp. at 3, 11.  Even assuming the GEP Agreement had terminated, however, the forum selection clause in paragraph 9 thereof expressly survives such termination.  *See* GEP Agreement, ¶ 9 ("Upon termination, the following Sections of thus Agreement will survive: 2(a), 4, 5, 6, 7, 8 and 9.") (Motion to Dismiss, Docket No. 18-2, Ex. B); *see also* GEP Agreement ¶ 9 ("[LimitNone] and Google agree to submit to the personal and exclusive jurisdiction of the courts located in Santa Clara County, California") (Motion to Dismiss, Docket No. 18-2, Ex. B).

[9] Though it fails to address the point in its argument, LimitNone suggests in its factual recitation that section (b) of the NDA's purpose only applies if the NDA is explicitly referenced and incorporated in subsequent agreements.  Opp. at 3.  But section (b) does not include such a requirement.  It simply requires that the "terms set forth below" be incorporated in any subsequent business agreement.  The pertinent terms for purposes of this motion—the NDA's

LimitNone's attempt to "distinguish" this case law by placing a burden on Google to show that *Google* assented to the contract that LimitNone signed is unavailing. Judge Easterbrook considered this issue in *Dye v. Wargo*. *Dye* held that if a plaintiff wanted to demonstrate that a defendant's failure to sign a contract indicated lack of the defendant's assent, then the *plaintiff* had the burden of proving lack of assent. *Dye v. Wargo*, 253 F.3d at 300. *Dye* also held that merely failing to sign the contract could not be seen as proof that the defendant did not assent to the contract. *Id.* In *Dye*, as in this action, because "[plaintiff] signed the document [defendant] tendered," the contract was established and enforceable against the plaintiff. *Id.* at 301.[10] Accordingly, the NDA binds LimitNone and is enforceable against it.

---

confidentiality clause and the forum selection clause—were indeed incorporated in the GEP Agreement. *See* GEP Agreement, ¶¶ 6, 9; *compare* NDA, ¶¶ 2, 16.

[10] LimitNone also argues that the NDA was superseded by the GEP Agreement. None of LimitNone's cited cases actually supports this argument. To the contrary, there is ample authority that multiple contracts concerning similar subject matter may govern simultaneously without nullifying or superseding each other. *See, e.g.*, *Photogen, Inc. v. Wolf*, 2001 WL 477226, at *1 (N.D. Ill. May 7, 2001) (holding dispute was governed by three related contracts, entered into at different times); *Diversified Technologies Corp. v. Jerome Technologies, Inc.*, 118 F.R.D. 445, 447 (N.D. Ill. 1988) (noting that the court had held earlier that two separate agreements containing confidentiality provisions—a non disclosure agreement and an agreement for engineering services—both governed the dispute). Nor does the presence of an integration clause necessarily cause one agreement to supersede another related agreement. *See Nissan Forklift Corp. v. Zenith Fuel Systems, L.L.C.,* 2006 WL 643937, at *7 (N.D. Ill. March 3, 2006) (when two other contracts impose different obligations than the main contract, integration clause in main contract does not negate other contracts); *Wonderlic Agency, Inc. v. Acceleration Corp.*, 624 F. Supp. 801, 804 (N.D. Ill. 1985) (contracts were separate but related, and therefore not superseded by integration clause; rather, inclusion of integration clause in each indicated that the contracts were intended to function separately). In any event, as explained above, the Court need not even reach this issue, because *both* the NDA and the GEP Agreement contain California forum selection clauses, which is all that is relevant on this motion.

V.  **LIMITNONE HAS NOT DEMONSTRATED FRAUD, DEPRIVATION OF ITS DAY IN COURT, OR CONTRAVENTION OF A STRONG PUBLIC POLICY— AS IT MUST TO AVOID ENFORCEMENT OF THE TWO FORUM SELECTION CLAUSES TO WHICH IT AGREED.**

LimitNone argues that the Court should not enforce the forum selection clauses in the NDA and GEP Agreements to which LimitNone agreed because doing so would be "unreasonable."  *See* Opp. at 16-18.  LimitNone applies the wrong standard and reaches the wrong conclusion.

As explained in Google's Motion to Dismiss, the burden on a party seeking to set aside a forum selection clause is a heavy one.  A "forum-selection clause is given controlling weight in all but the most exceptional cases."  *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) (Kennedy, J., concurring).  Specifically, forum selection clauses are held invalid only in three narrowly defined circumstances:

> (1) if their incorporation into the contract was the result of **fraud, undue influence or overweening bargaining power**, . . . (2) if the selected forum is so "gravely difficult and inconvenient that [the complaining party] will for all practical purposes be **deprived of its day in court .** . . or (3) if enforcement of the clauses would **contravene a strong public policy** of the forum in which the suit is brought, declared by statute or judicial decision . . . .

*Stewart Organization, Inc.*, 487 U.S. at 32; *see also* Motion to Dismiss at 8.

LimitNone does not even address two of these three factors (fraud and public policy), thereby conceding them.  As for the third factor, deprivation of one's day in court, though LimitNone may now prefer its home forum, that cannot avoid enforcement of the clauses to which LimitNone agreed.  Rather, LimitNone must demonstrate that the target forum "will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."  *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 758 (7th Cir. 1992) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)) (enforcing forum selection clause requiring litigation in Germany); *Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 23 (Ill. App.

1 Dist. 1987) (same) (enforcing forum selection clause); *see also Clinton v. Janger*, 583 F.Supp. 284, 289 (N.D. Ill. 1984) (enforcing forum selection clause where plaintiffs would not "effectively be deprived of their day in court" by having to litigate in the Channel Islands). The Seventh Circuit has confirmed that the "mere inconvenience" of travel "does not amount to depriving [plaintiff] of a meaningful day in court." *Heller Financial, Inc.*, 883 F.2d at 1293.

LimitNone has not even attempted to claim that enforcing the forum selection clause would deprive it of its day in court. Nor could it. At best, LimitNone has argued that litigation in California—the forum to which it traveled in order to initiate its relationship with Google (Complaint ¶ 21)—would be less convenient for it than litigation in Illinois. LimitNone cannot render unenforceable two governing forum selection clauses based upon mere inconvenience. *See Paper Exp.*, 972 F.2d at 758; *Heller Financial, Inc.*, 883 F.2d at 1293; *see also AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F.Supp.2d 834, 849 (N.D. Ill. 2006) (assertions that litigating in the target forum would be "financially burdensome" and would make securing witnesses more difficult did not render a forum selection clause unenforceable, as such assertions are merely argument that the forum is "inconvenient, an argument that is waived by virtue of" agreement to the selection clause in the first place).

LimitNone has not met its heavy burden of showing that litigation in California would deprive it of its day in court. As such, the California forum selection clauses are enforceable.

## VI.    DISMISSAL OR TRANSFER IS APPROPRIATE UNDER SECTION 1404(A).

Lastly, LimitNone argues that Google has not met the test for transfer of an action under section 1404(a). Again, LimitNone has missed the mark. "Under § 1404(a), the party seeking transfer must demonstrate that (1) venue is proper in the transferor court; (2) venue would be proper in the transferee court; and (3) transfer will serve the convenience of the parties and witnesses and promote the interests of justice." *Adventus Americas Inc. v. Innovative Environmental Technologies*, 2007 WL 704938 at *8 (N.D. Ill., March 5, 2007) (Manning, J.) (citation omitted). Google has met all three requirements here.

First, with respect to the transferor court, LimitNone itself has pleaded that venue is proper in this county, and cannot now argue to the contrary.  *See* Complaint, ¶ 5 ("Venue is proper in Cook County…").[11]  Second, venue is proper in the transferee court, sitting in the Northern District of California, because Google is headquartered there.  *See* 28 U.S.C. § 1391(b)(1).  Third, Google has demonstrated at length in its moving papers why transfer would serve the convenience of the parties and witnesses, and would promote the interests of justice.  *See* Motion to Dismiss, at 10-14.  (Docket No. 18).

LimitNone, by contrast, has failed to proffer any evidence that Illinois would be a better forum for resolution of this dispute.[12]  As a threshold matter, LimitNone fails to address or rebut the fact that by agreeing to not just one, but two, forum selection clauses mandating venue in Santa Clara County, California, LimitNone cannot later argue that such a venue is inconvenient.  *See* Motion to Dismiss at 11-12 (Docket No. 18); *Heller Financial, Inc.*, 883 F.2d at 1293 ("By virtue of the forum-selection clause, Midwhey has waived the right to assert its own inconvenience as a reason to transfer the case.").[13]  By failing to respond to the argument, LimitNone concedes the point.  *MCI WorldCom Network Services, Inc. v. Atlas Excavating, Inc.*,

---

[11] As noted at page 13 of Google's moving papers, even if LimitNone is wrong and venue is in fact improper in this Court (the transferring court), this Court could still transfer this action pursuant to 28 U.S.C. § 1406(a), which grants courts discretion to transfer a case "in the interests of justice" from a district where venue is improper to one where venue is proper.

[12] LimitNone misapprehends the governing law when it argues that this Court must first make a determination as to subject matter jurisdiction before it may proceed in resolving Google's Motion to Dismiss for Improper Venue.  To the contrary, the United States Supreme Court has specifically stated that courts may (as this Court has done here) elect to determine threshold issues of venue before taking up subject matter jurisdiction issues.  *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 127 S.Ct. 1184, 1191 (2007); *see also Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006) (rejecting notion that "subject matter jurisdiction always must be resolved ahead of" forum transfer motions and predicting the outcome of the *Sinochem* opinion while certiorari was pending).  *See* Google's Opposition to Plaintiff's Motion for Reconsideration of August 4, 2008 Minute Order, pp. 5-7 (Docket No. 38).

[13] Rather than address the fact that it twice agreed to litigate claims in California, LimitNone instead ignores it and simply states that as the plaintiff, its choice of forum deserves consideration.  Opp. at 18-19.  But as already explained in Google's Motion to Dismiss, LimitNone's preference is overruled by the forum selection clauses to which it previously agreed.  *See* Motion to Dismiss at 11-12 (Docket No. 18).

2006 WL 3542332 at 3 (N.D. Ill., Dec. 6, 2006) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession.")

Moreover, LimitNone has provided no evidence whatsoever to support its conclusory statement that Illinois has "the most contacts and convenience for the parties and witnesses." Opp. at 18. For instance, LimitNone identifies no witnesses of Google, or even its own, that reside in Illinois (nor what relevant testimony those witnesses might have). Further, LimitNone identifies none of the "interactions" between Google and LimitNone that supposedly happened in Illinois. In short, LimitNone proffers no evidence or affidavits contesting the showing that Google has made, based on the face of the Complaint and the application of governing case law, that litigation would be most convenient in California. On this basis alone, LimitNone's half-hearted and unsupported attempt to demonstrate inconvenience (and thereby avoid enforcement of the California forum selection clauses) should be rejected. *See Heller Financial, Inc.*, 883 F.2d at 1293 (rejecting assertions of party seeking to avoid enforcement of forum selection clause who had "supplied nothing in the way of affidavits, depositions, stipulations, or any other type of document"). Dismissal or transfer of this action under section 1404(a) is appropriate.

## <u>CONCLUSION</u>

For the foregoing reasons, Google respectfully requests that this Court dismiss this action for improper venue, or, in the alternative, transfer it to the District Court for the Northern District of California.

DATED:  September 2, 2008                    Respectfully submitted,

GOOGLE INC.


By:  /s/ Rachel M. Herrick
One of Its Attorneys

Michael T. Zeller (ARDC No. 6226433)
QUINN EMANUEL URQUHART OLIVER
 & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
(213) 443-3100 (fax)

Rachel M. Herrick
(*Admitted Pro Hac Vice*)
QUINN EMANUEL URQUHART OLIVER
 & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
(650) 801-5000
(650) 801-5100 (fax)

Jonathan M. Cyrluk (ARDC No. 6210250)
STETLER & DUFFY, LTD
11 South LaSalle Street, Suite 1200
Chicago, Illinois 60603
(312) 338-0200
(312) 338-0070 (fax)

Attorneys for Google Inc.

## <u>CERTIFICATE OF SERVICE</u>

      I, Rachel M. Herrick, an attorney, certify under penalty of perjury that I caused a copy of the forgoing document to be served on all counsel of record via the Court's CM/ECF online filing system this 2nd day of September, 2008.

         /s/ Rachel M. Herrick    
               Rachel M. Herrick