IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIMITNONE LLC, | ) | Hon. Blanche Manning |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-4178 |
| | ) | |
| vs. | ) | Magistrate Judge Cox |
| | ) | |
| GOOGLE INC, | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF FILING**

Please take notice that on Friday, September 5, 2008, I caused to be filed with the Clerk

in the above captioned Court, **Exhibit A to Defendant Google Inc.'s Notice of Removal**, a

copy of which is hereupon served on you via the Court's CM/ECF Online filing system.

DATED:  September 5, 2008                    Respectfully submitted,

                                             GOOGLE INC.


                                             By:  /s/ Henry M. Baskerville_____
                                                    One of Its Attorneys

                                             Michael T. Zeller (ARDC No. 6226433)
                                             QUINN EMANUEL URQUHART OLIVER
                                              & HEDGES, LLP
                                             865 South Figueroa Street, 10th Floor
                                             Los Angeles, California 90017
                                             (213) 443-3000
                                             (213) 443-3100 (fax)

                                             Rachel M. Herrick
                                             (*Admitted Pro Hac Vice*)
                                             QUINN EMANUEL URQUHART OLIVER
                                              & HEDGES, LLP
                                             555 Twin Dolphin Drive, Suite 560
                                             Redwood Shores, California 94065
                                             (650) 801-5000
                                             (650) 801-5100 (fax)

Jonathan M. Cyrluk (ARDC No. 6210250)
Henry M. Baskerville (ARDC No. 6285712)
STETLER & DUFFY, LTD
11 South LaSalle Street, Suite 1200
Chicago, Illinois 60603
(312) 338-0200
(312) 338-0070 (fax)

Attorneys for Google Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIMITNONE LLC, | ) | Hon. Blanche Manning |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-4178 |
| | ) | |
| vs. | ) | Magistrate Judge Cox |
| | ) | |
| GOOGLE INC, | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT A TO NOTICE OF REMOVAL**

Michael T. Zeller (ARDC No. 6226433)
QUINN EMANUEL URQUHART OLIVER
 & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
(213) 443-3100 (fax)

Rachel M. Herrick
(*Admitted Pro Hac Vice*)
QUINN EMANUEL URQUHART OLIVER
 & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
(650) 801-5000
(650) 801-5100 (fax)

Jonathan M. Cyrluk (ARDC No. 6210250)
Henry M. Baskerville (ARDC No. 6285712)
STETLER & DUFFY, LTD
11 South LaSalle Street, Suite 1200
Chicago, Illinois 60603
(312) 338-0200
(312) 338-0070 (fax)

Attorneys for Google Inc.

FIRM I.D. No. 16633

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| LIMITNONE, LLC, a Delaware Limited Liability Company, | 2008L006828 CALENDAR/ROOM Q TIME 00:00 Statutory Action |
| Plaintiff. | No. |
| v. | |
| GOOGLE INC., a Delaware Corporation, | |
| Defendant. | |

## COMPLAINT

Plaintiff LimitNone, LLC, by and through its attorneys, Kelley Drye & Warren,

LLP, for its Complaint against Defendant Google Inc., hereby alleges as follows:

### PARTIES

1.      Plaintiff LimitNone, LLC, is a limited liability company organized under

the laws of the State of Delaware, with its principal place of business located in Palatine, Illinois.

Ray Glassmann ("Glassmann") and Jonathan Sapir ("Sapir") are the sole Members and

Managers of LimitNone, LLC.  Each of Glassmann and Sapir are or have been in the business of

software development and consulting, specializing in building products, utilities, and

applications under the LimitNone name since January 2007 (collectively hereinafter

"LimitNone").

2.      Defendant Google Inc. ("Google") is a corporation organized under the

laws of the State of Delaware, with its principal place of business in Mountain View, California.

Google is registered to do business in the State of Illinois and does in fact transact business in

this state.

## JURISDICTION AND VENUE

3.        This Court has jurisdiction over Defendant Google pursuant to, *inter alia*, 735 ILCS 5/2-209(b)(4), because it is a corporation doing business within this State.

4.        Google has committed acts submitting to jurisdiction, pursuant to, *inter alia*, 735 ILCS 5/2-209(a)(1)(2) and (7).

5.        Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 because, *inter alia*, Cook County is the county in which some of the action arose.

## FACTS

### The Genesis of the Relationship Between LimitNone and Google

6.        Google has developed a suite of business software applications called "Google Apps" to compete directly against Microsoft and its "Office" brand suite of products (i.e., Outlook, Word, Excel, etc). Unlike Microsoft Office, a user does not install or download Google Apps onto his or her computer. Rather, Google Apps is a collection of web-based applications that reside (along with the user data) on Google's servers.

7.        Google Apps includes four computer business tools: Gmail, Google Talk, Google Calendar and Google Docs. Google claims that Google Apps allows an organization to give each employee a custom email address, tools for word processing, spreadsheets and presentations, a shared calendaring system and access to a flexible intranet system, as well as stand-alone security and compliance services.

8.        According to reports, Microsoft Office dominates the market with 500 million people using Microsoft Office tools. Google Apps has been promoted as a direct challenge to Microsoft Office.

9.     Google actively encourages and solicits third-party developers to build software enhancements and applications for use with Google's existing products, including those featured in Google Apps.

10.     The "Google Enterprise Professional Program", for example, is a corporate program promoted by Google to encourage independent, third-party developers to partner with Google to create innovative solutions or enhancements for Google's existing products and to introduce new products sponsored by Google.  Google specifically designed Google Apps to enable third-parties to build applications that could enhance Google's core work applications.  This arrangement is beneficial to Google because it makes Google Apps a more attractive alternative to Microsoft Office.

11.     Shortly after Google Apps launched in February 2007, more than 100,000 customers signed up for the service.

12.     At least 2,000 customers sign up for Google Apps every day.

13.     Based on prior subscriptions and Google's predictions regarding new subscriptions for Google Apps, numerous large corporations will be adopting Google Apps for tens of thousands of workers each month in 2008.

14.     Google encourages large enterprise clients to convert from Microsoft Office to Google Apps on a company-wide basis.  A major factor in the success of this approach is Google's ability to convince potential clients that they will be able to migrate all of their existing information seamlessly between software platforms if they convert from Microsoft Office to Google Apps.

15.     In January 2007, Google did not have a workable way to enable Microsoft Outlook users to easily migrate their email, calendar and contacts data from their desktops to Google's platform.

16.     LimitNone recognized Google's need for a desktop email, calendar and contacts migration tool and began developing a software program to migrate Microsoft Outlook data (i.e., email) from a user's desktop to Google's Gmail system.

17.     LimitNone spent over a year developing its migration tool, including initial design, development, testing and marketing.

18.     In early March 2007, Glassmann, on behalf of LimitNone, contacted a senior member of Google Apps after attending a Google presentation in Wisconsin on March 7, 2007. Glassmann expressed interest in attending a Google Enterprise Partner ("GEP") Conference that Google was hosting in California on March 14-15, 2007, for third-parties interested in becoming business partners with the Google Apps division.

19.     Google promotes its GEP Conferences as meetings designed to engage and solicit third-party development and improvement of applications and products that will add to or enhance the usefulness of Google's existing products, including Google Apps.

20.     On March 2, 2007, Scott McMullan, a senior executive in the Google Apps partner program invited Glassmann to join the "Google Enterprise Professional Group", a private group for Google Apps partners.

21.     Both Glassmann and Sapir attended the Google Apps GEP Conference on behalf of LimitNone at Google's headquarters in Mountain View, California on March 14-15, 2007. While there, they met with the senior executives of the Google Apps partner program, including McMullan, Kevin Smith, Salim Parak and Gabriel Cohen.

22.    During this session, LimitNone demonstrated two product prototypes, including a migration tool originally named "MY GRATE", but at Google's insistence later renamed "gMove" (hereinafter referred to as "gMove"). This was a confidential demonstration. All materials presented during the meeting were stamped or otherwise designated as "CONFIDENTIAL".

23.    gMove is a migration utility for moving Microsoft Outlook calendars, emails, contacts and tasks from a user's desktop computer or network to Gmail and/or Google hosted domains. gMove uses its unique software program to access users' Mircrosoft Outlook data and interface with Google's Applications Program Interfaces ("APIs") to convert Mircrosoft Outlook data to Gmail or other Google-hosted applications formats without losing or corrupting any data or the manner in which it is sorted.

24.    To use gMove, the user selects which Outlook folder(s) he or she wants to migrate and the date range(s) to be selected. gMove then automatically converts any selected Outlook folder structure into Gmail labels so that the user can find what he or she is looking for following migration. gMove maps the user's recurring calendar events from Outlook's parameters to Google Calendar events implementation, and the software program also converts Outlook contacts to contacts held in their Gmail system.

**Google's Interest in LimitNone's Trade Secret**

25.    During the March 14-15, 2007, sessions at Google's Mountain View campus, Smith and McMullan both stated that they were highly impressed by the LimitNone prototypes, particularly gMove. Smith and McMullan stated that Google had been unable to overcome problems in developing a desktop email migration tool, and that gMove was extraordinary in this regard.

26.    At that time, Glassmann specifically asked Smith and McMullan if Google intended to develop a similar desktop migration tool, stating that LimitNone did not want to invest any more time and money in developing gMove if Google had intentions of entering this product category.  Smith and/or McMullan expressly represented that Google was not, and would not be, developing an email migration tool and that the company instead preferred that any such migration tool came from a third-party partner.  On May 15, 2007, McMullan again confirmed, via instant message, that Google would not compete with gMove.

27.    During the March 14-15, 2007, meetings, members of the Google Apps team also represented that Google would provide LimitNone with all necessary development assistance, including providing LimitNone with access to Google's private APIs, to ensure that gMove would work with the Google Apps platform.

28.    Following the March 14-15, 2007, meetings, McMullan and other members of the Google Apps team spoke with a LimitNone representative at least twice a week.

29.    In April, May and June 2007, Google requested that LimitNone provide Google with working alpha and beta versions of the gMove program, as well as other design and development material, for Google's review and input.  All materials that were sent to Google, including these early versions of the gMove program, and all written and electronic correspondence relating to the development of gMove, were clearly stamped "CONFIDENTIAL" and were understood to be LimitNone's confidential and proprietary information.

30.    A user could not open the gMove program in beta or final form without acknowledging the confidential and proprietary nature of the program.

31.     All copies of gMove that were provided to Google and any other end user contained an express acknowledgement that the program was LimitNone's confidential and proprietary property.

32.     At all times, LimitNone treated gMove as confidential and proprietary. Among other things, access to gMove source codes was strictly restricted – no one, including Google, was ever given access to these source codes; all copies of gMove were provided with an acknowledgement that it was confidential and proprietary; all materials related to the development and marketing of gMove were marked as "CONFIDENTIAL"; and access to the technical/inner workings of gMove within and outside of LimitNone was consistently restricted.

### Google's Promotion of gMove and LimitNone

33.     As early as April 2007, Google aggressively promoted gMove to its customers in order to induce them to move their suite of business software from Microsoft to Google Apps.

34.     In April of 2007, Google requested that LimitNone present gMove to Google's technical sales personnel at Google's worldwide sales conference.

35.     Google insisted that it be involved in testing and refining gMove. The Google Apps teams in Mountain View and Chicago conducted gMove product testing at various times throughout 2007.

36.     On May 7, 2007, gMove was presented to Google's engineers in Chicago.

37.     On May 29, 2007, Google and LimitNone released a joint press release to announce that LimitNone had joined the "Google Enterprise Professional Program" and would release "an Outlook Gmail migration tool [that] provides tight integration between Microsoft Office and Google Apps." McMullan commented in this statement: "Google is excited to have

LimitNone as a partner in the Google Enterprise Professional program. We're especially looking forward to LimitNone extending Google Apps with its gSHARE series of products [which includes gMove]."

38.     At the time of and after the joint press release, Google was actively promoting gMove on Google's website. Although copies of gMove were to be sold at a retail price of $29.00 per copy, Google asked that LimitNone price gMove at an introductory price of $19.00 per copy for Google's customers.

39.     In late June/early July 2007, LimitNone began selling version 1.0 of gMove to Google's customers through LimitNone's website and through a link on the Google App's home page. These initial sales were successful. Users indicated that they were pleased with the product, expressing their satisfaction in emails and online postings.

40.     Google continued its support of gMove following the launch of version 1.0. Google not only gave LimitNone access to Google's private APIs so that LimitNone could refine gMove's compatibility, but Google introduced LimitNone to many of Google's largest advertising customers, including: Procter & Gamble, Intel, Orbitz, Morgan Stanley, Toys "R" Us, and the American Bar Association. Google persuaded LimitNone to demonstrate gMove to these customers so that Google Apps sales personnel would be successful in converting them to Google Apps. Google even asked LimitNone to make customized changes to gMove in order to accommodate the specific needs of certain customers.

41.     At Google's insistence, in September 2007, LimitNone began work on gMove version 2.0, which would incorporate the enhancements requested by Google's larger customers (in particular, Procter & Gamble).

42.    Later in the fall of 2007, LimitNone was one of the few select "partners" that Google permitted to access Google's servers as "trusted testers" in order to further test and refine the gMove platform.  Google vigorously restricts access to its programs and inner-workings to anyone other than those designated as "trusted" by Google.

43.    In November 2007, LimitNone conducted testing at Google's request and advised Google that version 2.0 would be ready for release in January of 2008.

44.    Google asked LimitNone to participate in the "Google@Work" marketing events in Los Angeles, San Diego, Chicago and Detroit.  The "Google@Work" events were designed by Google to showcase Google Apps in an office environment as compared to Microsoft Office, and therefore the ability to easily migrate from Microsoft Outlook to Google Apps was critical.

45.    Google asked LimitNone to meet with the Google Open Source team in Chicago in order to facilitate marketing and development of gMove to local Google corporate customers.  LimitNone was asked to participate in several joint sales presentations with members of the Google Chicago Office to customers such as American Bar Association, Caterpillar, Dade Behring, Orbitz and Motorola.

46.    Google introduced LimitNone to Google's partner SupportSoft, which was to act as a reseller of gMove.

47.    Throughout the fall and winter of 2007, Google continued to meet with LimitNone's representatives at least twice a week, continued to introduce LimitNone to Google's customers and potential customers, and continued to request copies of the current versions of gMove.

48.     In addition to the detailed technical information that Google requested and had access to throughout the development of gMove, Google asked LimitNone to provide Google with LimitNone's detailed sales forecasts on an ongoing basis.

49.     Believing that Google was dealing with them in good faith, LimitNone shared all of this information in detail with the understanding that it would be treated as confidential by Google.

### Google's Misappropriation of LimitNone's Trade Secrets

50.     In early December of 2007, McMullan, for the very first time, informed LimitNone that it might have "competitors" in the Microsoft Outlook/Google Apps migration tool market, though McMullan concealed the identities of the purported "competitors".

51.     Later in December 2007, McMullan and Cohen informed LimitNone that Google itself was going to be releasing a competing product and would be giving it away for free to Google Apps "Premier" customers.  The product copied gMove's look, feel, functionality and distribution model, including several unique and proprietary operations.

52.     In subsequent communications between LimitNone and McMullan and another Google Apps team member, Jeff Ragusa, Google's representatives stated that, while initially Google did not intend to develop a competing product, upon further reflection, and considering that Google would have 50 million subscribers for this type of migration product, an internal decision was made that Google should author the product itself, not a third-party.

53.     In another discussion, McMullan stated to LimitNone that a 50 million user opportunity was "just too big to come from someone else" and that "this is how Google operates."

54.    With gMove priced at $19.00 per copy and Google's prediction that there were potentially 50 million users, Google deprived LimitNone of a $950 million dollar opportunity by offering Google's competitive product for free as a part of its "Premier" Google Apps package.

55.    Google's competing desktop email migration tool – called "Google Email Uploader" – is a copy of LimitNone's gMove product. Both gMove and Google's Email Uploader offer a nearly identical user experience, including but not limited to the following similar features on both products: sign in pane, window panes used to move from step to step, customization features, folder labels, uploading monitored by the progress bar, and check marks indicating the completed upload. The look and feel of both applications is almost identical and both operate under a similar conceptual design.

56.    Likewise, both gMove and the Google Email Uploader use a similar technical process – the MAPI library – to bind to the Outlook application in order to retrieve, process, and extract the personal information stored by Outlook.

57.    Prior to its exposure to gMove, Google was unable to solve the compatibility issues between Outlook and Google's platform with regard to the binding, retrieval and conversion process. When Google originally announced Google Apps – a student and former Google employee – Subir Jhanb, began working on a migration tool sometime in August of 2006. Jhanb was unable to solve compatibility issues and so the project was "put down" by Google and he returned to school.

58.    Google could not have developed its current migration tool without utilizing what it had learned from its confidential access to gMove. At a minimum, Google's access to the internal workings of gMove allowed it to gain a significant head-start on designing

-11-

the inner workings for a competing application. Without Google's knowledge and use of the gMove trade secrets and confidential information, Google would not have been able to solve its long standing Microsoft Outlook to Gmail conversion problem.

## COUNT I

### Misappropriation of Trade Secrets (Illinois Trade Secret Act, 765 ILCS 1065/1-9 *et seq.*)

59.    LimitNone hereby restates and incorporates by reference paragraphs 1 through 58 above, as though fully set forth herein.

60.    LimitNone's gMove program and all communications with Google regarding the program constitute trade secrets and confidential information.

61.    At all relevant times, LimitNone took reasonable efforts to maintain the confidentiality of its trade secrets and confidential information, including the gMove program and related materials, by, among other things, requiring all users to agree that it was confidential and proprietary, marking materials related to the development and marketing of gMove as "CONFIDENTIAL", and maintaining restricted access to technical/inner workings of gMove within and outside of LimitNone.

62.    Google misappropriated LimitNone's trade secrets and confidential information without the consent of LimitNone, for Google's own benefit and gain.

63.    At the time of Google's misappropriation, Google knew it was misappropriating LimitNone's trade secrets and confidential information and displayed a conscious disregard of the rights of LimitNone in this regard.

64.    As a result of Google's misappropriation of LimitNone's trade secrets and confidential information, LimitNone was, and continues to be, damaged.

65.    LimitNone is entitled to injunctive relief, actual, consequential, potential damages and exemplary damages and attorneys' fees pursuant to Illinois law, 765 ILCS 1065/1-9 and common law.

WHEREFORE, LimitNone requests relief as follows:

(A)    Injunctive relief prohibiting Google, or any entity it is involved with, from possessing, maintaining, utilizing, profiting from, transferring, or using in any fashion, LimitNone's trade secrets and confidential information associated with gMove;

(B)    That Google be required to reimburse LimitNone for all actual damages suffered by reason of Google's illegal conduct, including lost revenue and lost productivity, as well as any revenue or income that Google obtained that is attributable to its misappropriation of LimitNone's trade secrets and confidential information not taken into account in computing the actual damages;

(C)    That exemplary damages be awarded as authorized under the Illinois Trade Secret Act, 765 ILCS 1065/1-9 *et seq.*, for Google's willful and intentional misappropriation of LimitNone's trade secrets and confidential information;

(D)    That Google be required to pay all of LimitNone's attorneys' fees, expenses and costs associated with this action, under the Illinois Trade Secret Act, 765 ILCS 1065/1-9 *et seq.*; and

(E)    That this Court grant such other and further relief as this Court may deem just and equitable.

## COUNT II

## Violation of Illinois Consumer Fraud & Deceptive Business Practices Act
## (815 ILCS 505/1 *et seq.*)

66.    LimitNone hereby restates and incorporates by reference paragraphs 1 through 65 above, as though fully set forth herein.

67.    Google engaged in numerous acts of deception in the course of inducing LimitNone to share confidential and trade secret information with Google regarding gMove. Google then used that same confidential information for its own benefit in order to develop and market the Google Email Uploader in competition with gMove.

68.    At all relevant times, Google represented to LimitNone that Google had not and would not be developing or marketing a competing product to gMove.  Google intended that LimitNone rely upon its deceptive statements in this regard so that LimitNone would share its confidential and trade secret information, which Google in turn used to develop its competing product.

69.    LimitNone relied upon Google's deceptive acts at all relevant times and shared its confidential and trade secret information with Google because of Google's deception.

70.    It was not until Google had extracted all of the confidential and trade secret information regarding gMove – through numerous recordings of LimitNone's presentations, meetings with LimitNone, possession of the alpha and beta versions as well as other copies made of the gMove program, LimitNone's sales forecasts and all related marketing materials – that Google announced it was coming out with a competing product.

71.    Google's deceptive acts involve trade or commerce.  Among other things, Google's Email Uploader and LimitNone's gMove are both marketed to and used by end

consumers. Google's deceptive behavior affects trade or commerce by its chilling effects on competition in this sector.

72.    More specifically, by offering its product for free, Google has effectively shut down competition in this sector in general and in particular with regard to LimitNone's gMove because Google offers the program at no additional cost when a consumer purchases Google's "Premier" Google Apps package and provides it as an open-source program, thereby allowing public access to the program's inner workings for copying, use and/or subsequent enhancement by any third-party.

73.    Google has substantially increased the profitability of its Google Apps business by including the Google Email Uploader in the "Premier" package.

74.    LimitNone has suffered and will continue to suffer damages as a result of Google's deceptive practices. LimitNone's profits from sales of gMove have vanished since Google made available a product identical to gMove when a "Premier" package for Google Apps is purchased.

75.    In addition, Google's actions have caused LimitNone to lose several large corporate sales that were imminent prior to Google's introduction of the Google Email Uploader.

76.    As of May 2008, Google changed its user interface, which in turn affected the compatibility of gMove's Web scripting – the final component used to complete the desktop migration process – so that gMove was no longer compatible with the Google Apps platform, and would not be unless and until LimitNone changed its source codes for gMove to accommodate the changes made by Google. Accordingly, LimitNone has provided refunds to numerous customers of the prior version of gMove due to this recent incompatibility issue. LimitNone also has devoted its time and resources to creating a new version of gMove that will

work with Google's new user interface to avoid the costs associated with reimbursing customers for the incompatibility issue.

77.     But for Google's deceptive behavior in misappropriating LimitNone's confidential and trade secret information that was used to develop and market Google's Email Uploader in direct competition with LimitNone's gMove, LimitNone would stand to reap the benefits of over 50 million users of Google Apps purchasing gMove from LimitNone, as originally projected by Google.

WHEREFORE, LimitNone requests relief as follows:

(A)     That Google be required to reimburse LimitNone for all actual damages suffered by reason of Google's illegal conduct, including lost revenue and lost productivity, as well as any revenue or income that Google obtained that is attributable to its deceptive trade practices and misappropriation of LimitNone's trade secret and confidential information not taken into account in computing the actual damages;

(B)     That punitive damages be awarded as authorized under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10(a) *et seq.,* for Google's willful and intentional deceptive trade practices in its misappropriation of LimitNone's trade secrets and confidential information, which resulted in public injury;

(C)     That Google be required to pay all of LimitNone's attorneys' fees, expenses and costs associated with this action, under the 815 ILCS 505/10(a) *et seq.*; and

(E)     That this Court grant such other and further relief as this Court may deem just and equitable.

Dated: June 23, 2008

_____
One of the Attorneys for Plaintiff,
LimitNone, LLC

David A. Rammelt
Susan J. Greenspon
Caroline C. Plater
Matthew C. Luzadder
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 857-7070

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

2008L006828
CALENDAR/ROOM Q
TIME 00:00
Statutory Action

LIMITNONE, LLC, a Delaware Limited
Liability Company,

       Plaintiff.

   v.

GOOGLE INC., a Delaware Corporation,

       Defendant.

No.

---

### AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222 (B)

Pursuant to Supreme Court Rule 222 (B), counsel for the above-named plaintiff certifies

that plaintiff seeks money damages in excess of Fifty Thousand and 00/100ths Dollars ($50,000).

Dated: June 23, 2008

_____
One of the Attorneys for Plaintiff,
LimitNone, LLC

David A. Rammelt
Susan J. Greenspon
Caroline C. Plater
Matthew C. Luzadder
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL  60606
Firm ID: 16633
(312) 857-7070

CH01/RAMMD/231838.1

## CERTIFICATE OF SERVICE

    I, Henry M. Baskerville, an attorney, certify under penalty of perjury that I caused a copy of the forgoing document to be served on all counsel of record via the Court's CM/ECF online filing system this 5th day of September, 2008.

                                                    /s/ Henry M. Baskerville